NO. 07-06-0241-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 25, 2007


 ______________________________



TOMMY JOE VASQUEZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;



NO. 5428; HONORABLE KELLY G. MOORE, JUDGE


_______________________________




Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION


 Appellant pleaded guilty to the offense of sexual assault of a child and was
sentenced to twenty years. Appellant's plea was entered after the trial court had overruled
a motion to suppress appellant's written statement. The trial court certified appellant's right
to appeal the denial of the motion to suppress his written statement. We affirm.

 Appellant's attorney has filed an Anders brief and a motion to withdraw. Anders v.
California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 498 (1967). In support of his motion
to withdraw, counsel certifies that he has diligently reviewed the record, and in his opinion,
the record reflects no reversible error upon which an appeal can be predicated. Id. at 744-45. In compliance with High v. State, 573 S.W.2d 807, 813 (Tex.Crim.App. 1978), counsel
has candidly discussed why, under the controlling authorities, there is no error in the trial
court's judgment. Additionally, counsel has certified that he has provided appellant a copy
of the Anders brief and motion to withdraw and appropriately advised appellant of his right
to file a pro se response in this matter. Stafford v. State, 813 S.W.2d 503, 510
(Tex.Crim.App. 1991). The court has also advised appellant of his right to file a pro se
response. Appellant has not filed a response.

 By his Anders brief, counsel raises grounds that could possibly support an appeal,
but concludes the appeal is frivolous. We have reviewed these grounds and made an
independent review of the entire record to determine whether there are any arguable
grounds which might support an appeal. See Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346,
102 L.Ed.2d 300 (1988); Bledsoe v. State, 178 S.W.3d 824 (Tex.Crim.App. 2005). We
have found no such arguable grounds and agree with counsel that the appeal is frivolous.

 Accordingly, counsel's motion to withdraw is hereby granted (1)
 and the trial court's
judgment is affirmed.

 Mackey K. Hancock

 Justice





Do not publish. 
1. In granting counsel's motion to withdraw, however, we remind counsel to insure
that he has complied with the "educational" duty to inform appellant of his right to file a pro
se petition for discretionary review in the Court of Criminal Appeals. Ex parte Owens, 206
S.W.3d 670 (Tex.Crim.App. 2006).




nt-family: 'Arial', sans-serif">THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 56,256-D; HONORABLE DON EMERSON, JUDGE

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Following a plea of not guilty, Appellant, Raymond Joseph Jaramillo, Jr., was
convicted by a jury of aggravated assault. Punishment was assessed at fifteen years
confinement. Presenting a sole point of error, Appellant questions whether the evidence
is factually sufficient to establish that he used a weapon as alleged in the indictment in
such a way that the weapon was capable of causing death or serious bodily injury. We
affirm. 
Background Facts
          Appellant and the complainant, Melissa Lucy, have two children together and had
lived together until shortly before the incident giving rise to Appellant’s indictment. 
Although the evidence is disputed on the circumstances leading up to the incident, it is
undisputed that in the early morning hours of July 28, 2007, Lucy visited Appellant’s
residence and the two argued. Lucy maintained that Appellant was in her car and that he
“grabbed [her] and stuck a knife in the back of [her] ear.” As she tried to get out of the car,
he grabbed her again and “sliced [her] neck open.” She was able to get out of the car and
run toward the house screaming so as to awake Appellant’s roommate. According to the
roommate, Appellant was refusing to let Lucy leave and the roommate held him back while
Lucy ran to her car, started it, and began rolling up her window. Appellant then
approached Lucy’s car and the roommate observed him put his hand inside the partially
rolled up window. As Appellant reached into the car, Lucy drove off. 
          Lucy testified that when Appellant reached inside the car window, he “hit” her in the
chest. As she was driving away and turned the corner, she “felt wet” and realized she was
bleeding. She pulled into a convenience store parking lot and called 911.
          Police Officers Holcomb and Dorris responded to the call. They observed a
laceration on Lucy’s neck and a large blood spot on the upper left part of her chest. Officer
Holcomb observed that Lucy was bleeding from a puncture wound. He described her as
weak and faint. Lucy identified Appellant as her assailant. After Lucy was transported to
the hospital for treatment,


 the officers located and secured Appellant and placed him
under arrest. No weapon was ever located. Appellant remained incarcerated until the time
of trial where he was convicted of aggravated assault with a deadly weapon. See Tex.
Penal Code Ann. § 22.02(a) (Vernon Supp. 2008).


 This appeal ensued. 
          Relying on Rivera v. State, 271 S.W.3d 301 (Tex.App.–San Antonio 2008, no pet.), 
and other cases, Appellant maintains the evidence is factually insufficient to establish that
he used a weapon as alleged in the indictment in such a way that it was capable of causing
death or serious bodily injury. In light of the recent decision of Tucker v. State, No. PD-0742-07, 2008 WL 5047699, at *3 (Tex.Crim.App. Nov. 26, 2008), we disagree.
Standard of Review-Factual Sufficiency Review
          When conducting a factual sufficiency review, we must begin with the assumption
that the evidence is legally sufficient under Jackson.


 Laster v. State, ___S.W.3d ___, No.
PD-1276-07, 2009 WL 80226, at *2 (Tex.Crim.App. Jan. 14, 2009). A conviction is not
subject to reversal on the basis of factually insufficient evidence unless: (1) the evidence
supporting the conviction is “too weak” to support the factfinder’s verdict, or (2) considering 
conflicting evidence, the factfinder’s verdict is “against the great weight and preponderance
of the evidence.” Id. In conducting our factual sufficiency review, we must defer to the
jury’s findings and we cannot conclude that the conviction is factually insufficient simply
because we might disagree with the jury’s verdict. Watson v. State, 204 S.W.3d 404, 416-17 (Tex.Crim.App. 2006); Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). 
Additionally, we measure the factual sufficiency of the evidence by the elements of the
offense as defined by a hypothetically correct jury charge. See Wooley v. State, No. PD-0861-07, 2008 WL 2512843, at *1 (Tex.Crim.App. June 25, 2008) (citing Malik v. State,
953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997)). 
          As directed by the Court of Criminal Appeals, in conducting our analysis we are
guided by at least three “basic ground rules”: (1) we must consider all of the evidence in
a neutral light, as opposed to in a light most favorable to the verdict;


 (2) we may only find
the evidence factually insufficient when necessary to “prevent manifest injustice”;


 and (3)
we must explain why the evidence presented is too weak to support the verdict or why the
conflicting evidence greatly weighs against the verdict.


 Laster v. State, 2009 WL 80226,
at *2; Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
          When conducting a factual sufficiency review, we must consider the most important
evidence that an appellant claims undermines the jury’s verdict. Sims v. State, 99 S.W.3d
600, 603 (Tex.Crim.App. 2003). Cognizant that we are to consider all evidence in a neutral
light, we are not, however, required to discuss all evidence admitted at trial. See id. See
also Roberts v. State, 221 S.W.3d 659, 665 (Tex.Crim.App. 2007).
          We must always remain cognizant of the jury’s role and unique position in evaluating
credibility and demeanor of witnesses and giving weight to contradictory testimonial
evidence. Johnson v. State, 23 S.W.3d 1, 8-9 (Tex.Crim.App. 2000). Reconciliation of
conflicts in the evidence is within the exclusive province of the jury. Margraves v. State,
34 S.W.3d 912, 919 (Tex.Crim.App. 2000). Unless the record clearly demonstrates a
different result is appropriate, we must defer to the jury’s determination. Johnson, 23
S.W.3d at 8. 
Aggravated Assault
          Appellant was indicted as follows:
[Appellant] did then and there intentionally or knowingly cause bodily injury
to Lucy by stabbing her with a knife, and [Appellant] did then and there use
or exhibit a deadly weapon, to-wit: a knife, that in the manner and means of
its use and intended use was capable of causing death or serious bodily
injury . . . .
A deadly weapon is “anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury.” § 1.07(17) (Vernon Supp. 2008). Serious bodily
injury is “bodily injury that creates a substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.” § 1.07(46). Therefore, as indicted, the State was required to prove that
Appellant intentionally or knowingly caused bodily injury to Lucy, see § 22.01, that
Appellant used or exhibited a knife; and that the knife, in the manner of its use or intended
use, was capable of causing death or serious bodily injury. See § 22.02(a)(2).


 
 I.        Deadly Weapon 
          A. Knife 
          A knife is not a deadly weapon per se. Thomas v. State, 821 S.W.2d 616, 619
(Tex.Crim.App. 1991). Thus, the State must prove that a knife is, in the manner of its use
or intended use, capable of causing death or serious bodily injury. Id. at 620. The State
may establish that a knife is a deadly weapon by evidence of the size, shape, and
sharpness of the knife; the physical proximity between the victim and the object; threats
or words used by the defendant; the knife’s ability to cause death or serious bodily injury;
and the manner in which the defendant used the weapon. See Rivera, 271 S.W.3d at 304.
It is not, however, necessary for the State to introduce a knife into evidence to prove that
it is a deadly weapon. Morales v. State, 633 S.W.2d 866, 868 (Tex.Crim.App. 1982). Nor
is expert testimony necessary. Davidson v. State, 602 S.W.2d 272, 273 (Tex.Crim.App.
1980).           
          Although Lucy testified that Appellant grabbed her and “stuck a knife in the back of
[her] ear,” no knife was introduced into evidence and she did not testify about the size,
shape, or sharpness of the knife. Neither did the doctor who treated Lucy or the police
officers who responded to the 911 call and who conducted the investigation testify about
the size and shape of the knife used. Furthermore, even though Lucy testified that when
Appellant stuck his arm inside her car window and “hit” her in the chest, she did not
mention whether or not he used a weapon . She did not testify about any words spoken
by Appellant during the assault. Neither did she testify about the extent of her injuries or
any pain she experienced. 
          Appellant’s roommate testified that Appellant had carried a gray knife with a “little
hook on the end.” However, at the time of the altercation, he did not see that knife, or any
other, in Appellant’s hand. Having only scant evidence of a knife, our analysis now focuses
on whether the State proved that the weapon used by Appellant was capable of causing
death or serious bodily injury. (Emphasis added). 
          B. Capable of causing serious bodily injury
          The placement of the word “capable” is crucial to understanding a determination of
deadly weapon status. See Tucker, 2008 WL 5047699, at *3. See generally McCain v.
State, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000) (interpreting § 1.07(a)(17)(B) (deadly
weapon definition)). Even without expert testimony or a description of the weapon, the
injuries suffered by the victim can by themselves be a sufficient basis for inferring that a
deadly weapon was used. See Tucker, 2008 WL 5047699, at *3. See also Denham v.
State, 574 S.W.2d 129, 130 (Tex.Crim.App. 1978) (noting that wounds inflicted on a victim
are a factor to consider in determining whether a weapon qualifies as a deadly weapon). 
          Appellant asserts that Lucy’s injuries were not serious: she had a superficial
laceration that did not require suturing; no overnight stay in the hospital was required; and
she was not rendered incapacitated and she left the emergency room to smoke cigarettes. 
Appellant argues that the “only reasonable inference from this evidence that the knife
caused only superficial wounds is that the knife, or whatever it was, was not capable of
causing serious bodily injury or death.” (Emphasis in brief). 
          Relying on Tucker v. State, 221 S.W.3d 780 (Tex.App.–Corpus Christi 2007), rev’d,
No. PD-0742-07, 2008 WL 5047699, at *3 (Tex.Crim.App. Nov. 26, 2008), Appellant
maintains that if we hold that a knife is a deadly weapon because “a physician had concern
for potential injury,” we negate the requirement that the State prove the knife, or whatever
the weapon may have been, have the capacity to cause serious bodily injury or death. 
According to the opinion of the Corpus Christi Court of Appeals, the victim suffered a
puncture wound to the back of her neck near her spine and a puncture mark on her arm. 
Her wounds were bandaged but did not require stitches. She spent the night in the
hospital. The victim told one of the officers that the appellant carried a two-inch folding
knife. 
          In reversing the appellant’s conviction for legally insufficient evidence, the court of
appeals noted that a weapon’s capability of causing death or serious bodily injury must be
supported by evidence relating directly to the circumstances of the criminal episode and
not upon a hypothetical capability of causing death or serious bodily injury. 221 S.W.3d
at 783. In its opinion reversing the court of appeals, the Court of Criminal Appeals recited
the following reasons for the court of appeals’s reversal of the appellant’s conviction:
∙no evidence of threats by the appellant during the incident; 
∙no testimony about the sharpness of the knife the appellant carried; 
∙neither officer testified that the knife had the ability to inflict death or
serious injury; 
∙the actual knife was not introduced into evidence; 
∙there was no evidence on the manner in which the appellant used the
knife; 
∙the complainant was unable to see the knife; 
∙the wounds were not severe enough to require stitches; and 
∙no expert testimony was offered to support a deadly weapon finding. 
 
Tucker, 2008 WL 5047699, at *2. However, in its review, the high Court found the
recitation of the evidence provided by the court of appeals to be incomplete with respect
to one of the officer’s testimony. The Court supplemented the evidence in its opinion. Id. 
          According to the opinion of the Court of Criminal Appeals, the officer who
interviewed the victim testified that she had suffered a “‘stab wound to the back of her
neck, close to her spine, and she was in a lot of pain.’” The officer also testified “‘that
whatever object that was used went all the way through her arm.’” The officer also
responded affirmatively when asked if a key had been used to inflict the victim’s injuries,
would it be considered a deadly weapon. Id.
          We recognize that at the time Appellant’s brief was filed, he did not have the benefit
of the Court of Criminal Appeals’s opinion reversing the Corpus Christi Court. The high
Court criticized the court of appeals for minimizing the officers’ testimony and neglecting
to take into account all the relevant facts, perhaps the most crucial of which was the stab
wound to the victim’s forearm. The Court of Criminal Appeals explained:
[i]t does not take expert testimony to recognize that such a wound could
easily have severed a major blood vessel or nerve, placing the victim’s life,
or at least the use of her arm in jeopardy. Even though the victim was
fortunate that she did not receive such a serious injury, the weapon that
caused her wound was capable, in its manner of use, of causing serious
bodily injury. In addition, the court of appeals unduly minimized the stab
wound to the back of the neck, near the spine, when it failed to observe that
this injury generated a lot of pain. Such a wound, received in a vulnerable
area, would seem to carry at least some potential for resulting in a serious
bodily injury such as paralysis or death.
 
Id. at 3. (Emphasis in original).
 
          In the instant case, when Lucy arrived at the emergency room, she presented a stab
wound to the left upper chest and a laceration to her neck. The doctor testified that the cut
on her neck was not very deep and did not require any suturing. The doctor did not testify
as to the specific treatment necessitated by the chest wound other than to state that it did
not require major treatment. His primary concern was the potential injury to her chest just
below the clavicle. He recalled that Lucy was in pain and was given pain medication for
the discomfort. His concern with the stab wound to the chest was “an injury to the lung or
to the heart or major vessels under there.” According to the doctor, the potential risks of
an injury to the lung could lead to a tension pneumothorax, which if left untreated, could
result in death. He ordered a chest x-ray to check for evidence of a collapsed lung or blood
filling up the chest cavity. Although the first x-rays did not show immediate life-threatening
injuries, he repeated them because “those injuries can take a while to show up.” Although
we cannot ascribe to medical knowledge, we do note that the upper left chest of a person
is a vulnerable area.
          When asked to explain to the jury his understanding of “serious bodily injury,” the
doctor testified it is “any injury that has the potential to cause significant mortality, death
or morbidity, which is a significant change in your lifestyle or a significant adverse
outcome.” He was then asked if, in his opinion, the wound suffered by Lucy met the
definition of “serious bodily injury.” He responded, 
[i]t certainly has the potential. It is in an area of the chest that certainly could
have injured her heart or lungs. 
In this case it turned out fortunately that she did not have a – it was not an
injury that required any major treatment, but certainly had the potential to do
it. 
 
Regarding the injury to Lucy’s left upper chest, the doctor concluded that based on the
wound he observed, it was consistent with someone being stabbed in the chest.
          In his brief, Appellant emphasizes the doctor’s use of the word “potential” as being
insufficient to satisfy “serious bodily injury” because Appellant maintains that Lucy’s
wounds were “superficial.” However, as quoted above, the Court of Criminal appeals has
now included the word “potential” in its analysis of whether a wound results in serious
bodily injury. Tucker, 2008 WL 5047699, at *3. A wound received in a vulnerable area, 
which carries “at least some potential” for resulting in a serious bodily injury, is some
evidence of use of a weapon capable of causing serious bodily injury. Id. 
           Additionally, State’s Exhibit 4 is a photograph that depicts the injury to Lucy’s left
upper chest. Although submitted on appeal in black and white, it shows a gaping hole. A
photograph of a wound may be sufficient for a jury to infer that the manner in which a
defendant used a weapon rendered it a deadly weapon. See generally Morales, 633
S.W.2d at 868-69 (concluding that photograph of deep slash from just underneath the
victim’s earlobe across her cheek to the corner of her mouth, closed by sutures, was
sufficient to show that a deadly weapon was used). 
Conclusion
          Based on the sum of the doctor’s testimony on the potential risks from Lucy’s injury
to her left upper chest, together with Officer Holcomb’s description of Lucy as bleeding,
weak, and faint, and State’s Exhibit 4 depicting the open wound to Lucy’s chest, we
conclude the evidence is factually sufficient to show that the weapon used by Appellant
was capable of causing serious bodily injury. Giving proper deference to the jury’s finding,
we conclude the verdict is not manifestly unjust. Cain, 958 S.W.2d at 407. Appellant’s
sole point of error is overruled.
          Consequently, the trial court’s judgment is affirmed.


                                                                           Patrick A. Pirtle

                                                                                 Justice
Do not publish.