**Marcus Lee TUCKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–03–608–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

March 15, 2007.

Bob Wicoff, Houston, for appellant.

Charles A. Rosenthal, Jr., Dist. Attorney–Harris County, William J. Delmore, III, Chief Prosecutor, Appellate Division, Houston, for appellee.

Before Chief Justice VALDEZ and Justices YAÑEZ and BAIRD.[1]

## OPINION

Opinion by Justice BAIRD.

Appellant was charged by indictment with the offense of aggravated assault. The indictment alleged two prior felony convictions for the purpose of enhancing the range of punishment. A jury convicted appellant of the charged offense. The trial judge found the enhancement allegations true and assessed punishment at thirty-five years confinement in the Texas Department of Criminal Justice–Institutional Division. Appellant raises five points of error. We sustain the first point and reverse the judgment of the trial court.

■ The first point of error challenges the sufficiency of the evidence to support the jury's verdict. Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* at 320, 99 S.Ct. 2781. The evidence is examined in the light most favorable to the factfinder. *Id.* A successful legal sufficiency challenge will result in the rendition of an acquittal by the reviewing court. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

There is little dispute over the relevant facts in the instant case. When viewed in the light most favorable to the jury's verdict, those facts are: appellant and the complainant were living together and jointly running a business; the two had an argument about some aspect of the business; and, the argument cumulated into a physical altercation. The indictment alleged the offense of aggravated assault under section 22.02(a)(2) of the penal code, which provides that a person commits an offense if he uses a deadly weapon while causing bodily injury. Tex. Pen.Code Ann.

1. Former Texas Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* Tex. Gov't Code Ann. § 74.003 (Vernon 2005).

§ 22.02(a)(2) (Vernon Supp.2006). Appellant contends the evidence is insufficient to prove the deadly weapon element.

■ When a person is charged with using a deadly weapon, the evidence must establish that the weapon was actually deadly. *Lockett v. State*, 874 S.W.2d 810, 814 (Tex.App.-Dallas 1994, pet. ref'd). The penal code defines a "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury...." Tex. Pen. Code Ann. §§ 1.07(a)(17)(A), (B) (Vernon 2006). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Pen.Code Ann. § 1.07(a)(46) (Vernon 2006). Because the complainant did not die or actually suffer serious bodily injury, the narrow issue in this case is whether the weapon used by appellant was *capable* of causing death or serious bodily injury. *Adame v. State*, 69 S.W.3d 581, 582 (Tex.Crim.App. 2002) (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App.2000) ("an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury")). Therefore, we must view the evidence in the light most favorable to the verdict and determine whether any rational jury could have found appellant used a weapon in such a way that the weapon would be *capable* of causing death or serious bodily injury.

The State offered evidence on this issue from three sources. First is the testimony of Houston police officer Dennis Vonquintus, who stated that he arrived at the scene and saw the complainant's shirt soaked in blood. Vonquintus testified primarily about two wounds: a puncture wound to the back of the complainant's neck near her spine, and a puncture mark on her arm.[2] Upon noticing the second wound, the complainant stated to Vonquintus that appellant carried a two-inch folding knife. Vonquintus was told by the complainant that she and appellant had fought but she had not seen appellant use a weapon other than his fists. Vonquintus testified the two injuries could not have been caused by a fist.

Vonquintus testified that, in his experience, these were clean cuts and "my first thought was that [appellant] had stabbed [the complainant]." At this point in his testimony, the following exchange occurred between the prosecutor and Vonquintus:

Q. Did you know what object, specifically?

A. No.

Q. Would you classify it as an unknown object?

A. Yes.

Q. Would you classify it as a deadly weapon?

A. Yes.

Vonquintus could not tell if the bleeding was life-threatening, only that the complainant was bleeding profusely. Vonquintus admitted the complainant never said she had been stabbed. However, Vonquintus formed that opinion because, in his experience, victims of crime do not always realize the nature of their injuries.

The complainant's medical records state she was treated for stab wounds to the back and forearm. The records do not indicate that either wound required

---

**2.** Vonquintus further testified there was another injury "somewhere around her upper back," and other injuries on the complainant's back, but he could not see them.

stitches. The complainant was released after spending the night in the hospital.

After leaving the hospital, the complainant was interviewed and photographed by Janet Arceneaux, also an officer with the Houston police department. Arceneaux described the complainant's injuries as being "lacerations," which was clarified as meaning "some kind of cut."[3] Arceneaux testified that the injuries could have been inflicted by a knife and perhaps a key depending on the type of key and the manner of its use. During her testimony, Arceneaux answered affirmatively when asked: "[W]ere the injuries that you saw on [the complainant] consistent with being inflicted with some sort of object that could be considered a deadly weapon?"[4]

■ This is the sum of the evidence related to the issue at hand, namely whether appellant used a weapon in such a way that the weapon would be *capable* of causing death or serious bodily injury. In resolving this issue, we are mindful that a weapon's capacity to cause death or serious bodily injury must be supported by evidence relating directly to the circumstances of the criminal episode and not upon a hypothetical capability of causing death or serious bodily injury. *Johnston v. State*, 115 S.W.3d 761, 763 (Tex.App.-Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim.App.2004).

■ From the record evidence, only two objects, a two-inch folding knife or a key, could have conceivably been used by appellant as a weapon.[5] We will begin with the issue of the knife, which is not a deadly weapon per se. *Robertson v. State*, 163 S.W.3d 730, 732 (Tex.Crim.App.2005); *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim.App.1991). However, a knife may become a deadly weapon and the courts have recognized several factors to consider when determining whether a knife was used as a deadly weapon: (1) the physical proximity between the complainant and the knife; (2) threats or words by the defendant; (3) the size, shape and sharpness of the knife; (4) testimony about the knife's ability to inflict death or serious injury; (5) the actual knife need not be introduced into evidence if a witness is able to testify about the knife and the manner in which it was used; (6) assertive conduct by the actor; and (7) the location and severity of the wounds inflicted. *Thomas v. State*, 821 S.W.2d 616, 619 (Tex. Crim.App.1991); *Bailey v. State*, 46 S.W.3d 487, 491 (Tex.App.-Corpus Christi 2001, pet. ref'd); *Billey v. State*, 895 S.W.2d 417, 420–21 (Tex.App.-Amarillo 1995, pet. ref'd); *Ortiz v. State*, 993 S.W.2d

---

3. A portion of this testimony is confusing. At one point, Arceneaux described a bandage on the complainant's back which covered an injury. Arceneaux did not remove the bandage but rather relied upon the complainant's description of the injury. When asked what she had been told by the complainant, Arceneaux testified: "She had a stab wound. Well, I'm sorry. She had a laceration to the back upper neck area that appeared to be like a cut. And then she had one close to her spine."

4. The complainant testified that appellant did not have a knife or keys in his hand during the physical altercation. She testified that she repeatedly told the medical staff that she had not been stabbed but the doctor insisted that she had been stabbed. She also stated that she received no stitches for any injury sustained in the altercation. This fact is confirmed by the medical records. The complainant's testimony will not be used in our legal sufficiency analysis because it does not support and, therefore, cannot be viewed in a light favorable to the jury's verdict.

5. The allegation that the object was unknown has been determined by this Court to be a non-essential element which may properly be excluded from a hypothetically correct charge and, therefore, a legal sufficiency analysis. *In re A.J.G.*, 131 S.W.3d 687, 694 (Tex.App.-Corpus Christi 2004, pet. denied).

892, 894 (Tex.App.-Fort Worth 1999, no pet.); *Garcia v. State*, 17 S.W.3d 1, 5 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). Either expert testimony or lay testimony may be sufficient to support a deadly weapon finding. *English v. State*, 647 S.W.2d 667, 668–69 (Tex.Crim.App. 1983); *Bailey*, 46 S.W.3d at 492. No one factor is determinative, and the fact finder must examine each case on all of its facts to determine whether the knife is a deadly weapon. *Garcia v. State*, 17 S.W.3d 1, 4 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd).

We will address these factors seriatim. First, the injuries were inflicted by appellant while the complainant lay on the ground. Second, there were no threats or words by appellant before, during, or after the infliction of the injuries. Third, the knife was described by Vonquintus as a two-inch folding knife. Elsewhere, there was testimony that the knife had a two-inch blade. There was no testimony about the sharpness of the knife. Fourth, neither Vonquintus nor Arceneaux testified that a two-inch folding knife had the ability to inflict death or serious injury. However, both testified that the weapon that caused the complainant's injuries could be "classified" or "considered" as a deadly weapon. Fifth, the actual knife was not introduced into evidence. There is evidence from Vonquintus about the knife, namely that it was a two-inch folding knife. However, there is no evidence on the manner in which appellant used the knife. The complainant was laying on the ground with her hands over her face and, therefore, unable to see the knife and the manner of its use. Sixth, appellant's conduct was assertive in that he was engaged in a physical altercation with the complainant. Seventh, the wounds, which were to the back and forearm, were not severe enough to require stitches. No expert testimony was offered to support a deadly weapon finding.

We are asked to determine whether appellant *actually* used a two-inch knife in such a way that it was *capable* of causing death or serious bodily injury, not whether a two-inch knife could hypothetically be capable of causing death or serious bodily injury. When the eight factors listed above are considered in the context of the instant case, we hold there is insufficient evidence to prove that a two-inch folding knife, as actually used by appellant, was capable of causing death, a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *See* Tex. Pen.Code Ann. § 1.07(a)(46) (Vernon 2006). There is no evidence whatsoever regarding the manner of how appellant actually used the knife, much less that he used it or intended to use it in a manner capable of causing death or serious bodily injury.

The State relies primarily upon the testimony of Vonquintus and Arceneaux that the weapon that caused the complainant's injuries could be "classified" or "considered" as a deadly weapon. This case, like *Adame*, is *not* a "used or exhibited" case, because the evidence showed that appellant used some form of weapon other than his fist to injure the complainant. Instead, the issue is whether that weapon was "capable" of causing death or serious bodily injury. *Adame*, 69 S.W.3d at 582. In the cases dealing with this issue, the weapon's capability has been readily obvious, as with the butcher knife with a nine-inch blade in *McCain*, or accompanied by some testimony, whether expert or not, as to how the weapon could be used in a deadly fashion, as in *Adame*, where a police investigator testified that the defendant's BB gun "could cause serious bodily injury if it were pointed and fired at someone." *See*

*id.; McCain,* 22 S.W.3d at 503. A two-inch folding knife is not obviously capable of causing death or serious bodily injury and there was no testimony from either Vonquintus or Arceneaux as to how such a knife as actually used by appellant in the instant case could be used to cause death or serious bodily injury.[6] Accordingly, we hold the evidence is insufficient to prove appellant used a knife as a deadly weapon.

■ We now turn to the issue of whether a key could have constituted a deadly weapon as used by appellant in the instant case. The evidence on this issue is even weaker than with the knife because there was no description of any key. Therefore, for the reasons stated above, we also conclude the evidence was insufficient to prove appellant used a key as a deadly weapon.

We sustain the first point of error. The judgment of the trial court is reversed. If we reverse a criminal case for legal insufficiency, we are authorized to reform the judgment of conviction to reflect conviction for a lesser offense only if a jury charge on the lesser offense was either submitted or requested, but denied; otherwise, we vacate the judgment of conviction and order a judgment of acquittal. *Martinez v. State,* 198 S.W.3d 36, 43 (Tex.App.-Corpus Christi, 2006, no pet.) (citing *Collier v. State,* 999 S.W.2d 779, 782 (Tex.Crim.App. 1999); *Swearingen v. State,* 101 S.W.3d 89, 97 (Tex.Crim.App.2003)). The jury was not so instructed and neither party requested such an instruction. Accordingly, we may not reform the judgment to reflect

a conviction for assault. Tex. Pen.Code Ann. § 22.01(a)(1) (Vernon Supp.2006). Therefore, we remand this cause to the trial court for the entry of a judgment of acquittal. *Tibbs v. Florida,* 457 U.S. 31, 41–42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 26–27, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).[7]

6. For example, the evidence would have been sufficient had Vonquintus or Arceneaux testified that sticking the blade of a two-inch folding knife in someone's eye was capable of causing permanent blindness, i.e., serious bodily injury, because it would be the protracted loss of the function of a bodily member or organ, *so long as* the appellant had actually used the knife to stick the complain-

ant in the eye whether it resulted in blindness or not.

7. For the reasons stated above, had it been necessary, we would have sustained the second point of error and found the evidence factually insufficient under the standard clarified and enunciated in *Watson v. State,* 204 S.W.3d 404, 412-414 (Tex.Crim.App., 2006).