

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00381-CR

**RICHARD TYRONE BAILEY,**

                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                        **Appellee**

From the 19th District Court
McLennan County, Texas
Trial Court No. 2007-236-C1

## MEMORANDUM  OPINION

A jury convicted Richard Tyrone Bailey of aggravated assault and sentenced him to twenty-seven years in prison.  In two points of error, Bailey challenges the legal and factual sufficiency of the evidence to support his conviction.  We affirm.

### FACTUAL BACKGROUND

Ronnie Harris is an MHMR patient and the teenage son of Bailey's wife Betty. On the night of the offense, Bailey and Harris began arguing about Harris entering the Baileys' apartment through a window after being told not to do so.  Bailey threatened to

shoot Harris if he again entered through the window. The argument escalated into a fist fight in the kitchen. Bailey struck Harris with a skillet three or four times.[1]

Betty was in the restroom during the argument. She found Bailey and Harris entangled, pulled the two men apart, and drove Harris to his grandmother's house. Harris's uncle, Joseph McDonald, was present when Harris and Betty arrived. Harris told McDonald that Bailey struck him in the head with a skillet. Harris then passed out. McDonald testified that Harris had a knot on the back of his head and was mumbling. He testified that Betty told the 9-1-1 dispatcher that Bailey struck Harris with a skillet.

Betty denied seeing Bailey strike Harris with a skillet. She did not recall speaking to the 9-1-1 dispatcher, but if she had, she would have merely repeated what Harris told her: that Bailey struck him with the skillet. She believed that Bailey was the aggressor and Harris was defending himself.

Harris was bleeding when Officer Maria Bucher arrived. Bucher testified that Harris was not cooperative because of his injuries and the pain. Harris testified that he felt "woozy." Betty told Bucher that Bailey struck Harris with the skillet as she and Harris were leaving the house. Betty did not tell Bucher that she was in the restroom during the fight or that the skillet incident had been relayed to her by Harris. Bailey told Bucher that if Harris had any injuries they resulted from Harris falling. Bailey wanted to press charges against Harris, but could not show that he had been injured or provide sufficient information to enable Bucher to file charges.

---

[1]     Medical records reflect that Harris claimed to have been struck five times.

Betty testified that she owns a cast iron skillet, which was on the stove when she returned from the restroom and encountered the fight. She saw the skillet on the day of the offense, but did not know where it is now. The skillet was never recovered.

## STANDARDS OF REVIEW

Under legal sufficiency review, we determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry*, 30 S.W.3d at 406; *Matson*, 819 S.W.2d at 843.

Under factual sufficiency review, we ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson*, 23 S.W.3d at 7. We do not indulge in

inferences or confine our view to evidence favoring one side.  Rather, we look at all the evidence on both sides and then make a predominantly intuitive judgment.  *Id.*

## ANALYSIS

A person commits aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during commission of the assault.  *See* TEX. PEN. CODE ANN. § 22.01 (Vernon Supp. 2008); *see also* TEX. PEN. CODE ANN. § 22.02 (Vernon Supp. 2008).  Bailey challenges the legal and factual sufficiency of the evidence to establish that he used a deadly weapon.

A deadly weapon constitutes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  TEX. PEN. CODE ANN. § 1.07 (17)(B) (Vernon Supp. 2007).  Several factors aid this determination: (1) the size and shape of the object; (2) the manner of its use or intended use; (3) the nature or existence of inflicted wounds; and (4) any testimony of the object's life-threatening capabilities. *Villarreal v. State*, 255 S.W.3d 205, 209 (Tex. App.—Waco 2008, no pet.).

Bailey cites *Hester v. State*, 909 S.W.2d 174 (Tex. App.—Dallas 1995, no pet.) and *Tucker v. State*, 221 S.W.3d 780 (Tex. App.—Corpus Christi 2007), *rev'd*, 2008 Tex. Crim. App. LEXIS 1443 (2008), to support his contention that the skillet is not a deadly weapon.[2]  He complains that: (1) Harris did not suffer serious bodily injury; (2) the

---

[2]    Citing *McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2007), Bailey contends that the skillet cannot meet the definition of a deadly weapon because "kitchen knives, utility knives, straight razors, and eating utensils are manifestly designed for other purposes and, consequently, do not qualify as deadly weapons."  *McCain*, 22 S.W.3d at 502.  However, the Court of Criminal Appeals held that "objects used to threaten deadly force are in fact deadly weapons."  *Id*. at 503.  In *McCain*, a butcher knife was found to be a deadly weapon.  *See id*.

skillet was not recovered; and (3) the record contains no testimony demonstrating how the skillet was used, such as how hard he hit Harris or how he delivered the blows.

In *Hester*, the evidence was insufficient to support a deadly weapon finding regarding a screwdriver. *See Hester*, 909 S.W.2d at 176. Hester had not "stab[bed] or attempt[ed] to stab the Voights with the screwdriver" or "verbally threaten[ed] to inflict serious bodily injury or death." *Id*. at 180. There was no evidence of the "sharpness, length, or width of the screwdriver's shaft." *Id*. The State admitted a "Stanley-type, Phillips-end screwdriver" as a jury aid, but the evidence did not show that Hester had used that type of screwdriver or that the one he did use or "one sufficiently similar to it could cause death or serious bodily injury." *Id*. The Voights did not testify that they believed Hester would cause them serious bodily injury or death. *See id*.

In *Tucker*, the Corpus Christi Court held that the evidence was insufficient to support a deadly weapon finding regarding a knife. *See Tucker*, 221 S.W.3d at 785. Tucker said nothing "before, during, or after the infliction of the injuries." *Id*. at 784. Other than testimony that the knife had a two inch blade, there was no testimony about the knife's sharpness. *See id*. Testimony merely established that the knife could be "classified" or "considered" a deadly weapon, not that it "had the ability to inflict death or serious injury." *Id*. The knife was not introduced into evidence and there was no evidence regarding the manner with which it was used, as the victim was "laying on the ground with her hands over her face and, therefore, unable to see the knife and the manner of its use." *Id*. The victim's wounds were "not severe enough to require stitches." *Id*.

The Court of Criminal Appeals recently reversed *Tucker*. *See Tucker v. State*, No. PD-0742-07, 2008 Tex. Crim. App. LEXIS 1443 (Tex. Crim. App. Nov. 26, 2008). The victim suffered two stab wounds: (1) one wound penetrated the victim's arm; and (2) a wound to the "back of the neck, near the spine" caused a lot of pain. *See Tucker*, 2008 Tex. Crim. App. LEXIS 1443 at *9. Expert testimony was not required to establish that the arm wound "could easily have severed a major blood vessel or nerve, placing the victim's life, or at least the use of her arm, in jeopardy." *Id*. Thus, "the weapon that caused her wound was *capable*, in its manner of use, of causing serious bodily injury." *Id*. The neck wound, "received in a vulnerable area, would seem to carry at least some potential for resulting in a serious bodily injury such as paralysis or death." *Id*. at *9-10.

Two police officers testified that "the injuries were inflicted by a deadly weapon." *Id*. at *10. Their "lengthy experience" qualified them to provide such testimony. *Id*. The Corpus Christi Court "minimized the officers' testimony in claiming that neither specifically testified that the folding knife had the ability to inflict death or serious bodily injury." *Id*. at *10-11. "Though neither officer knew whether the injuries were inflicted by a knife, a key, or some other object, both agreed, based on the nature of the injuries received, that the weapon that caused the injuries was a deadly weapon." *Id*. at *11. The Corpus Christi Court's reliance on "the absence of any detailed description of the knife or key or of exactly how appellant employed the weapon used to injure the victim," was based on the "incorrect assumption that the use of a deadly weapon cannot be inferred from the injuries themselves." *Id*. "Whether a deadly

weapon can be inferred solely from the victim's injuries depends, of course, on the nature of those injuries." *Id.*

*Tucker* and *Hester* are distinguishable for several reasons. First, the victim in *Tucker* was not in a position to see what object was used to cause her wounds. Harris *was* in a position to see Bailey use the skillet and apparently did see him use the skillet, having testified that Bailey struck him with the skillet. In *Hester*, Hester neither used nor attempted to use the screwdriver to inflict injury. Bailey actually did use the skillet to injure Harris.

Second, the defendants in *Tucker* and *Hester* said nothing and made no threats. Here, Bailey told Harris "'You better get out of here bitch ass n-----' or something like that." This statement can certainly be viewed as an expression of intent to inflict harm upon Harris. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991) ("Intent may be inferred from acts, words and conduct of accused."); *see also McCullough v. State*, No. 05-07-00605-CR, 2008 Tex. App. LEXIS 350, at *8-9 (Tex. App.—Dallas Jan. 17, 2008, pet. ref'd) (not designated for publication) (rejecting contention that defendant's statement, "I don't need you bitch," when he threw a plate at the victim "expresses anger or frustration, as opposed to any threat or intent to injure"; the jury could consider the statement "as a threat to [the victim's] personal safety.").

Third, the Court of Criminal Appeals' ruling in *Tucker* supports a finding that the skillet was capable of causing death or serious bodily injury, even absent evidence showing that Harris suffered serious bodily injury or showing how the skillet was used. The State was not required to either introduce the skillet into evidence or establish that

Harris suffered serious bodily injury in order to establish the skillet as a deadly weapon. *See Tucker*, 2008 Tex. Crim. App. LEXIS 1443, at *8; *see also Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982); *Villarreal*, 255 S.W.3d at 209. Detective Michelle Starr testified that any hard object used to strike a person's head, such as a brick or an iron skillet, would be a deadly weapon. *See Tucker*, Tex. Crim. App. LEXIS 1443, at *8, 10-11. She testified that the skillet would constitute a deadly weapon in this case, as it is capable of causing serious bodily injury when aimed at a person's head. *Id.*

Even in the absence of a description of the weapon or the manner of its use, the "injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used." *Id.* at *8. In *Ashcraft v. State*, No. 03-07-00237-CR, 2008 Tex. App. LEXIS 1338 (Tex. App.—Austin Feb. 21, 2008, pet. ref'd) (not designated for publication), the Austin Court reached a similar conclusion, finding that *Tucker* "was simply wrong when it stated that there was no evidence regarding the manner of the knife's use by the defendant." *Ashcraft*, 2008 Tex. App. LEXIS 1338, at *6. "[T]he evidence showed that the defendant used the knife to stab the complainant twice, once in the neck near the spine." *Id.* Ashcraft had stabbed the victim in the back four times using a pocket knife with a two-inch blade. *See id.* at *8. The knife was never recovered. *Id.* at *4. The victim's wounds were not serious, but required hospital treatment. *Id.* at *8. Two wounds were close to the victim's spine; the "jury could have reasonably inferred that, but for luck, the injuries inflicted by [Ashcraft] might have been much worse." *Id.* The jury could also "conclude that a knife long enough and sharp enough to penetrate a body as deeply as 5 centimeters, when used to repeatedly stab a person in

the back during a close physical struggle, is capable of causing serious bodily injury." *Id*. The Austin Court found the evidence legally and factually sufficient to support a deadly weapon finding. *See id*. at *8-9.

In the present case, Harris identified the skillet as a cast iron skillet and described it as "black, round with rough edges." There can only be so many ways to use a skillet as a deadly weapon. That Bailey struck Harris in the back of the head indicates that the skillet was likely swung at Harris. The record also suggests that Bailey and Harris were in close proximity when Bailey struck Harris with the skillet.[3]

Harris's injuries caused him to pass out, bleed, and feel "woozy", caused a knot to rise on the back of his head, and were significant enough to prompt a visit to the emergency room. An EMS technician described Harris's injury as "possibly severe." Harris was admitted to the emergency room for "head trauma assault." He complained of a headache, blurred vision, and pain. The doctor's impression was "[a]cute closed head injury [and] cervical sprain." A photograph admitted into evidence depicts Harris lying on an emergency room bed wearing a head strap. CT scans of Harris's head and spine were also taken. Medical personnel were apparently concerned about the extent of Harris's injuries. His head injury could have resulted in hemorrhaging, lesions, fractures, fluid collections, etc.

As in *Ashcraft* and *Tucker*, the jury could reasonably infer that wounds inflicted by the skillet had "some potential for resulting in a serious bodily injury" and "but for

---

[3] The record is not entirely clear as to whether Harris was struck in the kitchen, where the skillet was located, during the close physical altercation with Bailey or in the living room as he and Betty were exiting the apartment. As the sole judge of the weight and credibility of witness testimony, the jury bore the burden of resolving this inconsistency. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

luck, the injuries inflicted by [Bailey] might have been much worse." *Tucker*, 2008 Tex. Crim. App. LEXIS 1443, at *9-10; *Ashcraft*, 2008 Tex. App. LEXIS 1338, at *8. Due to the skillet's hardness, the number of times that Harris was struck, Harris's close proximity to Bailey, and the nature of Harris's injuries, the jury could reasonably conclude that the skillet was *capable*, in its manner of use, of causing death or serious bodily injury. *See Tucker*, 2008 Tex. Crim. App. LEXIS 1443, at *7-11; *see also Ashcraft*, 2008 Tex. App. LEXIS 1338, at *8-9.

Viewing all the evidence in the light most favorable to the verdict, the jury could reasonably conclude, beyond a reasonable doubt, that Bailey used the skillet as a deadly weapon. *See Curry*, 30 S.W.3d at 406. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong or manifestly unjust. *See Watson*, 204 S.W.3d at 414-15; *see also Johnson*, 23 S.W.3d at 11. Because the evidence is legally and factually sufficient to sustain Bailey's conviction, we overrule his first and second points of error. The judgment is affirmed.


                                        FELIPE REYNA
                                        Justice

Before Chief Justice Gray,
        Justice Vance, and
        Justice Reyna
        (Justice Vance concurs in the judgment with a note)*
Affirmed
Opinion delivered and filed December 17, 2008
Do not publish
[CRPM]

\*       (This is another example of the problem with the "deadly weapon" definition in the Penal Code.  Hopefully, at some point the Legislature will amend the statute to include only items that are truly deadly weapons.  A common ordinary skillet, found in every kitchen, should not be classified as a deadly weapon, given the consequences that flow from such a finding.  Nevertheless, under existing precedents, I concur in the judgment.)