NO. 07-08-0148-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 13, 2009

_____

RAYMOND JOSEPH JARAMILLO, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 56,256-D; HONORABLE DON EMERSON, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, Appellant, Raymond Joseph Jaramillo, Jr., was convicted by a jury of aggravated assault. Punishment was assessed at fifteen years confinement. Presenting a sole point of error, Appellant questions whether the evidence is factually sufficient to establish that he used a weapon as alleged in the indictment in

such a way that the weapon was capable of causing death or serious bodily injury. We affirm.

**Background Facts**

Appellant and the complainant, Melissa Lucy, have two children together and had lived together until shortly before the incident giving rise to Appellant's indictment. Although the evidence is disputed on the circumstances leading up to the incident, it is undisputed that in the early morning hours of July 28, 2007, Lucy visited Appellant's residence and the two argued. Lucy maintained that Appellant was in her car and that he "grabbed [her] and stuck a knife in the back of [her] ear." As she tried to get out of the car, he grabbed her again and "sliced [her] neck open." She was able to get out of the car and run toward the house screaming so as to awake Appellant's roommate. According to the roommate, Appellant was refusing to let Lucy leave and the roommate held him back while Lucy ran to her car, started it, and began rolling up her window. Appellant then approached Lucy's car and the roommate observed him put his hand inside the partially rolled up window. As Appellant reached into the car, Lucy drove off.

Lucy testified that when Appellant reached inside the car window, he "hit" her in the chest. As she was driving away and turned the corner, she "felt wet" and realized she was bleeding. She pulled into a convenience store parking lot and called 911.

2

Police Officers Holcomb and Dorris responded to the call. They observed a laceration on Lucy's neck and a large blood spot on the upper left part of her chest. Officer Holcomb observed that Lucy was bleeding from a puncture wound. He described her as weak and faint. Lucy identified Appellant as her assailant. After Lucy was transported to the hospital for treatment,[1] the officers located and secured Appellant and placed him under arrest. No weapon was ever located. Appellant remained incarcerated until the time of trial where he was convicted of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a) (Vernon Supp. 2008).[2] This appeal ensued.

Relying on *Rivera v. State*, 271 S.W.3d 301 (Tex.App.–San Antonio 2008, no pet.), and other cases, Appellant maintains the evidence is factually insufficient to establish that he used a weapon as alleged in the indictment in such a way that it was capable of causing death or serious bodily injury. In light of the recent decision of *Tucker v. State*, No. PD-0742-07, 2008 WL 5047699, at *3 (Tex.Crim.App. Nov. 26, 2008), we disagree.

### Standard of Review-Factual Sufficiency Review

When conducting a factual sufficiency review, we must begin with the assumption that the evidence is legally sufficient under *Jackson*.[3] *Laster v. State*, ___S.W.3d ___, No. PD-1276-07, 2009 WL 80226, at *2 (Tex.Crim.App. Jan. 14, 2009). A conviction is not

---

[1]Her treatment in the emergency room lasted approximately five hours.

[2]All references herein are to the Texas Penal Code Annotated unless otherwise designated.

[3]*Jackson v. Virginia,* 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

3

subject to reversal on the basis of factually insufficient evidence unless: (1) the evidence supporting the conviction is "too weak" to support the factfinder's verdict, or (2) considering conflicting evidence, the factfinder's verdict is "against the great weight and preponderance of the evidence." *Id.* In conducting our factual sufficiency review, we must defer to the jury's findings and we cannot conclude that the conviction is factually insufficient simply because we might disagree with the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 416-17 (Tex.Crim.App. 2006); *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). Additionally, we measure the factual sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Wooley v. State*, No. PD-0861-07, 2008 WL 2512843, at *1 (Tex.Crim.App. June 25, 2008) (citing *Malik v. State*, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997)).

As directed by the Court of Criminal Appeals, in conducting our analysis we are guided by at least three "basic ground rules": (1) we must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict;[4] (2) we may only find the evidence factually insufficient when necessary to "prevent manifest injustice";[5] and (3) we must explain why the evidence presented is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict.[6] *Laster v. State*, 2009 WL 80226, at *2; *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

---

[4]*Watson v. State*, 204 S.W.3d at 414.

[5]*Cain v. State*, 958 S.W.2d at 407.

[6]*Watson v. State*, 204 S.W.3d at 414.

4

When conducting a factual sufficiency review, we must consider the most important evidence that an appellant claims undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). Cognizant that we are to consider all evidence in a neutral light, we are not, however, required to discuss all evidence admitted at trial. *See id. See also Roberts v. State*, 221 S.W.3d 659, 665 (Tex.Crim.App. 2007).

We must always remain cognizant of the jury's role and unique position in evaluating credibility and demeanor of witnesses and giving weight to contradictory testimonial evidence. *Johnson v. State*, 23 S.W.3d 1, 8-9 (Tex.Crim.App. 2000). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). Unless the record clearly demonstrates a different result is appropriate, we must defer to the jury's determination. *Johnson*, 23 S.W.3d at 8.

## Aggravated Assault

Appellant was indicted as follows:

> [Appellant] did then and there intentionally or knowingly cause bodily injury to Lucy by stabbing her with a knife, and [Appellant] did then and there use or exhibit a deadly weapon, to-wit: a knife, that in the manner and means of its use and intended use was capable of causing death or serious bodily injury . . . .

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." § 1.07(17) (Vernon Supp. 2008). Serious bodily

5

injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." § 1.07(46). Therefore, as indicted, the State was required to prove that Appellant intentionally or knowingly caused bodily injury to Lucy, *see* § 22.01, that Appellant used or exhibited a knife; and that the knife, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *See* § 22.02(a)(2).[7]

## I.    Deadly Weapon

### A.  Knife

A knife is not a deadly weapon per se. *Thomas v. State*, 821 S.W.2d 616, 619 (Tex.Crim.App. 1991). Thus, the State must prove that a knife is, in the manner of its use or intended use, capable of causing death or serious bodily injury. *Id*. at 620. The State may establish that a knife is a deadly weapon by evidence of the size, shape, and sharpness of the knife; the physical proximity between the victim and the object; threats or words used by the defendant; the knife's ability to cause death or serious bodily injury; and the manner in which the defendant used the weapon. *See Rivera*, 271 S.W.3d at 304. It is not, however, necessary for the State to introduce a knife into evidence to prove that it is a deadly weapon. *Morales v. State*, 633 S.W.2d 866, 868 (Tex.Crim.App. 1982). Nor

---

[7]Appellant's challenge to the factual sufficiency of the evidence is limited to whether the State proved that the weapon used was capable of causing death or serious bodily injury.

is expert testimony necessary. *Davidson v. State*, 602 S.W.2d 272, 273 (Tex.Crim.App. 1980).

Although Lucy testified that Appellant grabbed her and "stuck a knife in the back of [her] ear," no knife was introduced into evidence and she did not testify about the size, shape, or sharpness of the knife. Neither did the doctor who treated Lucy or the police officers who responded to the 911 call and who conducted the investigation testify about the size and shape of the knife used. Furthermore, even though Lucy testified that when Appellant stuck his arm inside her car window and "hit" her in the chest, she did not mention whether or not he used a weapon . She did not testify about any words spoken by Appellant during the assault. Neither did she testify about the extent of her injuries or any pain she experienced.

Appellant's roommate testified that Appellant had carried a gray knife with a "little hook on the end." However, at the time of the altercation, he did not see that knife, or any other, in Appellant's hand. Having only scant evidence of a knife, our analysis now focuses on whether the State proved that the weapon used by Appellant was *capable* of causing death or serious bodily injury. (Emphasis added).

**B. Capable of causing serious bodily injury**

The placement of the word "capable" is crucial to understanding a determination of deadly weapon status. *See Tucker*, 2008 WL 5047699, at *3. *See generally McCain v.*

*State*, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000) (interpreting § 1.07(a)(17)(B) (deadly weapon definition)). Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used. *See Tucker*, 2008 WL 5047699, at *3. *See also Denham v. State*, 574 S.W.2d 129, 130 (Tex.Crim.App. 1978) (noting that wounds inflicted on a victim are a factor to consider in determining whether a weapon qualifies as a deadly weapon).

Appellant asserts that Lucy's injuries were not serious: she had a superficial laceration that did not require suturing; no overnight stay in the hospital was required; and she was not rendered incapacitated and she left the emergency room to smoke cigarettes. Appellant argues that the "only reasonable inference from this evidence that the knife caused only superficial wounds is that the knife, or *whatever it was*, was *not capable* of causing serious bodily injury or death." (Emphasis in brief).

Relying on *Tucker v. State*, 221 S.W.3d 780 (Tex.App.–Corpus Christi 2007), *rev'd*, No. PD-0742-07, 2008 WL 5047699, at *3 (Tex.Crim.App. Nov. 26, 2008), Appellant maintains that if we hold that a knife is a deadly weapon because "a physician had concern for *potential* injury," we negate the requirement that the State prove the knife, or whatever the weapon may have been, have the capacity to cause serious bodily injury or death. According to the opinion of the Corpus Christi Court of Appeals, the victim suffered a puncture wound to the back of her neck near her spine and a puncture mark on her arm. Her wounds were bandaged but did not require stitches. She spent the night in the

8

hospital. The victim told one of the officers that the appellant carried a two-inch folding knife.

In reversing the appellant's conviction for legally insufficient evidence, the court of appeals noted that a weapon's capability of causing death or serious bodily injury must be supported by evidence relating directly to the circumstances of the criminal episode and not upon a hypothetical capability of causing death or serious bodily injury. 221 S.W.3d at 783. In its opinion reversing the court of appeals, the Court of Criminal Appeals recited the following reasons for the court of appeals's reversal of the appellant's conviction:

- no evidence of threats by the appellant during the incident;
- no testimony about the sharpness of the knife the appellant carried;
- neither officer testified that the knife had the ability to inflict death or serious injury;
- the actual knife was not introduced into evidence;
- there was no evidence on the manner in which the appellant used the knife;
- the complainant was unable to see the knife;
- the wounds were not severe enough to require stitches; and
- no expert testimony was offered to support a deadly weapon finding.

*Tucker*, 2008 WL 5047699, at *2. However, in its review, the high Court found the recitation of the evidence provided by the court of appeals to be incomplete with respect to one of the officer's testimony. The Court supplemented the evidence in its opinion. *Id.*

9

According to the opinion of the Court of Criminal Appeals, the officer who interviewed the victim testified that she had suffered a "'stab wound to the back of her neck, close to her spine, and she was in a lot of pain.'" The officer also testified "'that whatever object that was used went all the way through her arm.'" The officer also responded affirmatively when asked if a key had been used to inflict the victim's injuries, would it be considered a deadly weapon. *Id.*

We recognize that at the time Appellant's brief was filed, he did not have the benefit of the Court of Criminal Appeals's opinion reversing the Corpus Christi Court. The high Court criticized the court of appeals for minimizing the officers' testimony and neglecting to take into account all the relevant facts, perhaps the most crucial of which was the stab wound to the victim's forearm. The Court of Criminal Appeals explained:

> [i]t does not take expert testimony to recognize that such a wound could easily have severed a major blood vessel or nerve, placing the victim's life, or at least the use of her arm in jeopardy. Even though the victim was fortunate that she did not receive such a serious injury, the weapon that caused her wound was *capable*, in its manner of use, of causing serious bodily injury. In addition, the court of appeals unduly minimized the stab wound to the back of the neck, near the spine, when it failed to observe that this injury generated a lot of pain. Such a wound, received in a vulnerable area, would seem to carry at least some potential for resulting in a serious bodily injury such as paralysis or death.

*Id.* at 3. (Emphasis in original).

In the instant case, when Lucy arrived at the emergency room, she presented a stab wound to the left upper chest and a laceration to her neck. The doctor testified that the cut

on her neck was not very deep and did not require any suturing. The doctor did not testify as to the specific treatment necessitated by the chest wound other than to state that it did not require major treatment. His primary concern was the potential injury to her chest just below the clavicle. He recalled that Lucy was in pain and was given pain medication for the discomfort. His concern with the stab wound to the chest was "an injury to the lung or to the heart or major vessels under there." According to the doctor, the potential risks of an injury to the lung could lead to a tension pneumothorax, which if left untreated, could result in death. He ordered a chest x-ray to check for evidence of a collapsed lung or blood filling up the chest cavity. Although the first x-rays did not show immediate life-threatening injuries, he repeated them because "those injuries can take a while to show up." Although we cannot ascribe to medical knowledge, we do note that the upper left chest of a person is a vulnerable area.

When asked to explain to the jury his understanding of "serious bodily injury," the doctor testified it is "any injury that has the potential to cause significant mortality, death or morbidity, which is a significant change in your lifestyle or a significant adverse outcome." He was then asked if, in his opinion, the wound suffered by Lucy met the definition of "serious bodily injury." He responded,

> [i]t certainly has the potential. It is in an area of the chest that certainly could have injured her heart or lungs.
>
> In this case it turned out fortunately that she did not have a – it was not an injury that required any major treatment, but certainly had the potential to do it.

11

Regarding the injury to Lucy's left upper chest, the doctor concluded that based on the wound he observed, it was consistent with someone being stabbed in the chest.

In his brief, Appellant emphasizes the doctor's use of the word "potential" as being insufficient to satisfy "serious bodily injury" because Appellant maintains that Lucy's wounds were "superficial." However, as quoted above, the Court of Criminal appeals has now included the word "potential" in its analysis of whether a wound results in serious bodily injury. *Tucker*, 2008 WL 5047699, at *3. A wound received in a vulnerable area, which carries "at least some potential" for resulting in a serious bodily injury, is some evidence of use of a weapon capable of causing serious bodily injury. *Id.*

Additionally, State's Exhibit 4 is a photograph that depicts the injury to Lucy's left upper chest. Although submitted on appeal in black and white, it shows a gaping hole. A photograph of a wound may be sufficient for a jury to infer that the manner in which a defendant used a weapon rendered it a deadly weapon. *See generally Morales*, 633 S.W.2d at 868-69 (concluding that photograph of deep slash from just underneath the victim's earlobe across her cheek to the corner of her mouth, closed by sutures, was sufficient to show that a deadly weapon was used).

## Conclusion

Based on the sum of the doctor's testimony on the potential risks from Lucy's injury to her left upper chest, together with Officer Holcomb's description of Lucy as bleeding,

12

weak, and faint, and State's Exhibit 4 depicting the open wound to Lucy's chest, we conclude the evidence is factually sufficient to show that the weapon used by Appellant was *capable* of causing serious bodily injury. Giving proper deference to the jury's finding, we conclude the verdict is not manifestly unjust. *Cain*, 958 S.W.2d at 407. Appellant's sole point of error is overruled.

Consequently, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.