**Desi VILLARREAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–06–00321–CR.**

Court of Appeals of Texas,
Waco.

Feb. 27, 2008.

Ronald G. Couch, Colleyville, for appellant.

Tim Curry, Crim. Dist. Atty., Fort Worth, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

A jury found Desi Villarreal guilty of aggravated sexual assault and the trial judge sentenced him to sixty years in prison. Villarreal asserts two issues on appeal: (1) that the trial court erred in denying his motion to suppress DNA evidence; and (2) that the record contains legally insufficient evidence to support the deadly weapon finding. We will affirm.

## Background

On September 17, 1998, an intruder entered the residence of K.C., her daughter P.Y., and P.Y.'s minor daughter. According to P.Y., the intruder, who had a knife, entered the bedroom where she and her daughter were sleeping and threatened to kill P.Y.'s daughter, if P.Y. refused to have sex with him. He then sexually assaulted P.Y. while they were in bed. The intruder then tied up P.Y. and K.C. and made them hop downstairs to get money from their vehicle. P.Y. was then sexually assaulted again in the living room. After drinking juice from the refrigerator, the intruder left in P.Y.s' car, threatening that if the police became involved, he would kill the whole family.

P.Y. went next door to a neighbor's house, called the police, and was taken to the hospital to be examined. The treating physician noted that P.Y. had taken a shower before coming to the hospital, and he was unable to find any external sperm but vaginal swabs were taken and sealed in a rape-kit.

During the trial for the 1998 offense, Virginia Hunter testified that with the exception of P.Y.'s rape kit, all of the evidence, photographs, witness statements, and the like were destroyed in error by the Grand Prairie Police Department.

## CODIS

Title 4, Subtitle B, Chapter 411, Subchapter G of the Government Code establishes a "DNA Database System" for Texas. TEX. GOV'T CODE ANN. §§ 411.148–.154 (Vernon Supp.2007). Section 411.148 requires that the Texas Department of Criminal Justice (TDCJ) collect a sample from every individual confined in a penal institution under its auspices. *Id.* § 411.148. Each sample is analyzed and the record is placed in the CODIS[1] DNA database. *Id.* §§ 411.142(g)(1), 411.146.

---

1. CODIS refers to the Combined DNA Index System that is jointly maintained by the Federal Bureau of Investigation and various state and local agencies. TEX. GOV'T CODE ANN. § 411.141(1) (Vernon Supp.2007).

On September 29, 2000, Villarreal was convicted of the offense of attempted kidnapping in Bexar County and received a sentence of eight years; while incarcerated, TDCJ obtained a DNA sample to be used in the CODIS database.[2]

## DNA Evidence

In January 2005, the Department of Public Safety, CODIS Division, in an effort to identify P.Y.'s assailant, matched the DNA from the blood sample given by Villarreal in 2001 to the DNA from the 1998 offense involving P.Y. Because of the match, the Grand Prairie Police Department obtained a search warrant for a saliva sample from Villarreal. Along with providing a "buccal swab," Villarreal submitted a written statement in which he admitted to having sexual relations with P.Y., but he claimed that it was consensual and no weapon was involved.

Prior to trial, Villarreal filed a motion to suppress evidence of the 2001 DNA sample on the basis that the sample was taken pursuant to a conviction that was not a "qualifying offense" under a prior version of section 411.148. The court overruled the motion to suppress and found an error in the paperwork to be administrative rather than constitutional.

In his first issue, Villarreal asserts that the trial court erred in admitting the DNA evidence. According to Villarreal, the sample was impermissibly obtained, and he states two reasons: first, the TDCJ paperwork authorizing the seizure of his blood under section 411.148 stated an unauthorized reason. Second, he points to a federal appellate court decision that struck

down a trial court's determination that a conviction from another state is not a DNA-eligible conviction. *Fuhrman v. Dretke*, 442 F.3d 893 (5th Cir.2006).

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89–90 (Tex.Crim.App.1997). When the facts are undisputed, as the relevant facts are here, and we are presented with a pure question of law, de novo review is proper. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999).

We will apply Subchapter G as it existed at the time of trial, August 30, 2006. The amending act in 2005 provides that amendments then made apply to DNA tests offered into evidence after the effective date of the amendments and to individuals confined in a TDCJ institution on or after the effective date. Acts 2005, 79th Leg., ch. 1224, § 22, eff. Sept. 1, 2005. The circumstances of this case meet both tests. The amending act further requires that the Department collect samples from all persons then confined for a felony "from whom a DNA sample was not required" before its effective date. *Id.* We thus reject both reasons proffered by Villarreal. Since at least September 1, 2005, Section 411.148 has required that all prison inmates provide blood samples or other specimens to be included in the CODIS DNA database.[3] TEX. GOV'T CODE ANN. § 411.148(a)(1)(B), (b). As of the date the DNA results were offered into evidence,

---

**2.** Villarreal's other criminal history is noteworthy because of the argument he makes. On December 22, 1992, he was convicted of first-degree burglary and assault and battery with a dangerous weapon in Tulsa, Oklahoma. He received a sentence of seven years

on the burglary charge and five years on the assault and battery charge.

**3.** A 2001 amendment to the statute appears to impose the same requirement on inmates serving felony sentences in TDCJ. Acts 2001, 77th Leg., R.S., ch. 1509, § 1.

Villarreal had been confined in a TDCJ facility for almost a year after the effective date of the amended act, during which time the statute imposed a mandatory duty on the Department to collect a sample for the DNA database. Because the Department already had a sample from Villarreal, the requirement of the statute was met.[4]

We overrule Villarreal's first issue.

## Sufficiency of the Evidence of a Deadly Weapon

Villarreal argues that the evidence was legally insufficient to show that he used a deadly weapon. To support his second issue, Villarreal argues that, in his statement given to police, he repeatedly denied using a weapon. He also claims that the alleged knife was never found, that P.Y. was the only witness to testify concerning the presence of a knife, and that P.Y. sustained no knife injuries.

 When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex.Crim.App.1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

 The State need not produce an alleged knife at trial to obtain a deadly weapon finding. *Morales v. State,* 633 S.W.2d 866, 868 (Tex.Crim.App. [Panel Op.] 1982); *Nickerson v. State,* 69 S.W.3d 661, 669 (Tex.App.-Waco 2002, pet. ref'd). A deadly weapon finding may be made, if otherwise supported by the evidence, regardless of whether any injury was inflicted. *See McCain v. State,* 22 S.W.3d 497, 503 (Tex.Crim.App.2000); *Rogers v. State,* 877 S.W.2d 498, 500 (Tex.App.-Fort Worth 1994, pet. ref'd). We examine the following factors to determine whether the evidence supports a finding that a knife is a deadly weapon: (1) the size, shape, and sharpness of the knife; (2) the manner of its use or intended use; (3) the nature or existence of inflicted wounds; and (4) any testimony of the knife's life-threatening capabilities. *Nickerson,* 69 S.W.3d at 670; *Garcia v. State,* 17 S.W.3d 1, 4 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd); *accord Thomas v. State,* 821 S.W.2d 616, 619 (Tex.Crim. App.1991).

P.Y. testified extensively about Villarreal's use of a knife. She testified that when she was in the bedroom, she could not initially see the knife, but she felt it on her

---

4. Thus, whether any of Villarreal's prior convictions qualified for mandatory sampling under the prior version of the statute is immaterial. Nevertheless, even if we applied the prior version, the Oklahoma offense for burglary of a habitation, which involved the same conduct proscribed by Penal Code section 30.02, was a "qualifying offense" that authorized TDCJ to collect a sample for the DNA database. *See Fuhrman v. Dretke,* 442 F.3d 893 (5th Cir.2006) (5th Circuit Court of Appeals held that it was error for the federal district court to rule that Fuhrman's Georgia burglary conviction did not require his DNA to be taken under the prior version of section 411.148.). Furthermore, were we to consider the facial discrepancy on the TDCJ paperwork, *i.e.,* listing the wrong offense, we would find that the offense listed by the Department employees on the form is irrelevant because under either version of the statute, the taking of the sample was mandatory.

back as Villarreal raped her. The treating physician corroborated this evidence when he testified that he found a small "fresh" scratch on P.Y.'s back when he performed the sexual assault exam.

P.Y. testified that the knife's blade was approximately six to eight inches in length and that Villarreal held the knife to her daughter's neck and threatened to kill her. She also testified that Villarreal bound her legs and feet using plastic zip ties, forced her to hop down the stairs, and later used the knife to cut the plastic straps so that he could rape her again in the living room. P.Y. also claims that, while holding the knife, Villarreal repeatedly told her that he would kill her and her family if they reported the incident to the police.

Viewing all the evidence in a light most favorable to the verdict, the jury as a rational trier of fact could have found that Villarreal used a deadly weapon in the commission of the crime. TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon 2003); *McCain*, 22 S.W.3d at 503. In summary, the evidence is legally sufficient to support the jury's deadly weapon finding. We overrule Villarreal's second issue.

### Conclusion

Having overruled Villarreal's two issues, we affirm the trial court's judgment.