

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0742-07

**MARCUS LEE TUCKER, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE THIRTEENTH COURT OF APPEALS
HARRIS COUNTY**

**KELLER, P.J., delivered the unanimous opinion of the Court.**

Appellant used a knife or some other sharp object to stab and cut the victim numerous times. The question here is whether the evidence was legally sufficient to show that the object that caused the wounds was a deadly weapon in the manner of its use or intended use. Answering that question "yes," we reverse the judgment of the court of appeals.

## I. BACKGROUND

Appellant was charged with aggravated assault by using a deadly weapon. The court of appeals recited the following evidence as pertinent to the deadly weapon issue:

The State offered evidence on this issue from three sources. First is the testimony of Houston police officer Dennis Vonquintus,[1] who stated that he arrived at the scene and saw the complainant's shirt soaked in blood. Vonquintus testified primarily about two wounds: a puncture wound to the back of the complainant's neck near her spine, and a puncture mark on her arm. Upon noticing the second wound, the complainant stated to Vonquintus that appellant carried a two-inch folding knife. Vonquintus was told by the complainant that she and appellant had fought but she had not seen appellant use a weapon other than his fists. Vonquintus testified the two injuries could not have been caused by a fist.

Vonquintus further testified there was another injury "somewhere around her upper back," and other injuries on the complainant's back, but he could not see them.

Vonquintus testified that, in his experience, these were clean cuts and "my first thought was that [appellant] had stabbed [the complainant]." At this point in his testimony, the following exchange occurred between the prosecutor and Vonquintus:

> Q. Did you know what object, specifically?
>
> A. No.
>
> Q. Would you classify it as an unknown object?
>
> A. Yes.
>
> Q. Would you classify it as a deadly weapon?
>
> A. Yes.

Vonquintus could not tell if the bleeding was life-threatening, only that the complainant was bleeding profusely. Vonquintus admitted the complainant never said she had been stabbed. However, Vonquintus formed that opinion because, in his experience, victims of crime do not always realize the nature of their injuries.

The complainant's medical records state she was treated for stab wounds to the back and forearm. The records do not indicate that either wound required stitches. The complainant was released after spending the night in the hospital.

After leaving the hospital, the complainant was interviewed and photographed by

---

[1] Vonquintus had been a patrol officer for thirteen years.

Janet Arceneaux, also an officer with the Houston police department.[2] Arceneaux described the complainant's injuries as being "lacerations," which was clarified as meaning "some kind of cut."

* * *

At one point, Arceneaux described a bandage on the complainant's back which covered an injury. Arceneaux did not remove the bandage but rather relied upon the complainant's description of the injury. When asked what she had been told by the complainant, Arceneaux testified: "She had a stab wound. Well, I'm sorry. She had a laceration to the back upper neck area that appeared to be like a cut. And then she had one close to her spine."

Arceneaux testified that the injuries could have been inflicted by a knife and perhaps a key depending on the type of key and the manner of its use. During her testimony, Arceneaux answered affirmatively when asked: "[W]ere the injuries that you saw on [the complainant] consistent with being inflicted with some sort of object that could be considered a deadly weapon?"[3]

The court of appeals described the above as "the sum of the evidence" related to the issue at hand.[4]

After reviewing the record, we find this recitation to be incomplete with respect to Arceneaux's testimony. Arceneaux also testified that the victim suffered "stab wounds to the back of her neck, close to her spine, and she was in a lot of pain." In addition, Arceneaux testified that the victim suffered "a through and through laceration cut," saying that it appeared "that whatever object that was used went all the way through her arm." And when asked, "If a key had been used to inflict this type of injury,[5] would you consider a key a deadly weapon," Arceneaux responded

---

[2] Arceneaux had been employed by the Houston Police Department for eighteen years and, at the time of her testimony, was a plain-clothes investigator in the homicide division of the family-violence unit.

[3] *Tucker v. State*, 221 S.W.3d 780, 782-83, 782 n.2, 783 n.3 (Tex. App.–Corpus Christi 2007).

[4] *Id*. at 783.

[5] This question was asked a little over a page after the testimony about the "through and through laceration cut." Though the words "this type of injury" may have been referring to that

affirmatively.

Appellant was convicted of aggravated assault and he appealed, claiming, among other things, that the evidence was legally insufficient to show that he used or exhibited a deadly weapon during the commission of the assault. After reciting what it considered to be the sum of the evidence relating to the issue, the court of appeals considered a number of factors that it believed showed that the evidence was insufficient to support the deadly weapon finding.[6] The court of appeals stated that no threats were made by appellant during the incident, that there was no testimony about the sharpness of the folding knife that appellant carried, that neither Vonquintus nor Arceneaux testified that the folding knife had the ability to inflict death or serious injury (though both testified that the weapon that caused the injuries could be classified as a deadly weapon), that the actual knife was not introduced into evidence, that there was no evidence on the manner in which appellant used the knife, that the complainant was unable to see the knife as it was used because she was lying on the ground with her hands over her face, that the wounds on the back and forearm were not severe enough to require stitches, and that no expert testimony was offered to support a deadly-weapon finding.[7] The court of appeals held that the evidence was insufficient to show that the folding knife, "as actually used by appellant, was capable of causing death, a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or

---

specific injury, it is not clear on this cold record to which injury or injuries the prosecutor was referring.

[6] *Tucker*, 221 S.W.3d at 783-85.

[7] *Id.* at 784.

organ."[8]  The court of appeals further held that there was "no evidence whatsoever regarding the manner of how appellant actually used the knife, much less that he used it or intended to use it in a manner capable of causing death or serious bodily injury."[9]  Responding to arguments made by the State, the court of appeals stated that "there was no testimony from either Vonquintus or Arceneaux as to how such a knife as actually used by appellant in the instant case could be used to cause death or serious bodily injury."[10]  With respect to the possibility that a key could have been used as the weapon, the court of appeals held that the evidence "is even weaker than with the knife because there was no description of any key."[11]  Consequently, the court of appeals sustained appellant's contention, reversed the judgment of the trial court, and remanded the case for entry of a judgment of acquittal.[12]

In the first ground of its petition for discretionary review, the State complains that the court of appeals erred in finding that the evidence was legally insufficient to support the deadly-weapon element of aggravated assault.[13]  We agree.

ENDFIELD

---

[8] *Id.*

[9] *Id.*

[10] *Id.* at 785.

[11] *Id.*

[12] *Id.*

[13] In its second ground, the State contends that we should overrule *Collier v. State*, 999 S.W.2d 779 (Tex. Crim. App. 1999), and permit reformation of the judgment to reflect conviction for a lesser-included offense.  Our disposition of the State's first ground obviates the need to address the second, so the State's second ground for review is dismissed.

## II. ANALYSIS

Under the variant of the offense of aggravated assault with which appellant was charged, a person commits an offense if he commits an assault and "uses or exhibits a deadly weapon during the commission of the assault."[14] A weapon can be deadly by design or use.[15] Neither a folding knife nor a key are deadly weapons by design.[16] An object is deadly weapon by usage if "in the manner of its use or intended use," the object "is capable of causing death or serious bodily injury."[17] "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."[18] The placement of the word "capable" is crucial to understanding this method of determining deadly-weapon status.[19] The State is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use is *capable of causing death or serious bodily injury.*"[20] Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that

---

[14] TEX. PEN. CODE §22.02(a)(2).

[15] *Id.*, §1.07(a)(17)(A), (B).

[16] *See McCain v. State*, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000)("an object that has an obvious purpose apart from causing death or serious bodily injury cannot be a deadly weapon" by design; most types of knives are not deadly weapons by design).

[17] TEX. PEN. CODE §1.07(a)(17)(B); *McCain*, 22 S.W.3d at 503.

[18] TEX. PEN. CODE §1.07(a)(46).

[19] *McCain*, 22 S.W.3d at 503.

[20] *Id.*

a deadly weapon was used.[21]

As we explained above, the court of appeals's opinion neglected to take into account all of the relevant facts, perhaps the most crucial of which was the stab wound that went all the way through the victim's arm. It does not take expert testimony to recognize that such a wound could easily have severed a major blood vessel or nerve, placing the victim's life, or at least the use of her arm, in jeopardy. Even though the victim was fortunate that she did not receive such a serious injury, the weapon that caused her wound was *capable*, in its manner of use, of causing serious bodily injury. In addition, the court of appeals unduly minimized the stab wound to the back of the neck, near the spine, when it failed to observe that this injury generated a lot of pain. Such a wound, received in a vulnerable area,[22] would seem to carry at least some potential for resulting in a serious bodily injury such as paralysis or death.

The court's assessment of the evidence that it did recite is also somewhat flawed. The court acknowledged that expert testimony or lay testimony may be sufficient to support a deadly-weapon finding,[23] but then stated that no expert testimony was offered to support a deadly-weapon finding. The court's conclusion ignores the fact that two police officers explicitly stated that the injuries were inflicted by a deadly weapon. Police officers can be expert witnesses with respect to whether a

---

[21] *Morales v. State*, 633 S.W.2d 866, 868-69 (Tex. Crim. App. 1982)(photograph of deep slash from just underneath the victim's earlobe across her cheek to the corner of her mouth, closed by sutures, was sufficient to show that a deadly weapon was used).

[22] *See id.* at 868 (common knowledge that throat is a particularly vulnerable part of the body).

[23] *Tucker*, at 783, citing *English v. State*, 647 S.W.2d 667 (Tex. Crim. App. 1983).

deadly weapon was used,[24] and the lengthy experience of both officers, and Arceneaux's position in a homicide division in particular, suggests qualification as an expert on whether certain wounds were caused by a deadly weapon.

The court of appeals also minimized the officers' testimony in claiming that neither specifically testified that the folding knife had the ability to inflict death or serious bodily injury. Though neither officer knew whether the injuries were inflicted by a knife, a key, or some other object, both agreed, based on the nature of the injuries received, that the weapon that caused the injuries was a deadly weapon. Other deficiencies in the record alleged by the court of appeals – the absence of any detailed description of the knife or key or of exactly how appellant employed the weapon used to injure the victim – rely upon the incorrect assumption that the use of a deadly weapon cannot be inferred from the injuries themselves. Whether a deadly weapon can be inferred solely from the victim's injuries depends, of course, on the nature of those injuries, but in this case, the jury did not act irrationally in concluding that appellant used a deadly weapon.

The judgment of the court of appeals is reversed, and the case is remanded to that court to address appellant's remaining points of error.

Delivered: November 26, 2008
Publish

---

[24] *Hawkins v. State*, 605 S.W.2d 586, 588 (Tex. Crim. App. 1980).