IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00381-CR

 

Richard Tyrone Bailey,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 19th District
Court

McLennan County, Texas

Trial Court No. 2007-236-C1

 



MEMORANDUM  Opinion



 








            A jury convicted Richard
Tyrone Bailey of aggravated assault and sentenced him to twenty-seven years in
prison.  In two points of error, Bailey challenges the legal and factual
sufficiency of the evidence to support his conviction.  We affirm.

FACTUAL BACKGROUND

            Ronnie Harris is an MHMR
patient and the teenage son of Bailey’s wife Betty.  On the night of the
offense, Bailey and Harris began arguing about Harris entering the Baileys’ apartment
through a window after being told not to do so.  Bailey threatened to shoot
Harris if he again entered through the window.  The argument escalated into a
fist fight in the kitchen.  Bailey struck Harris with a skillet three or four
times.[1]

Betty was in the restroom during the
argument.  She found Bailey and Harris entangled, pulled the two men apart, and
drove Harris to his grandmother’s house.  Harris’s uncle, Joseph McDonald, was present
when Harris and Betty arrived.  Harris told McDonald that Bailey struck him in
the head with a skillet.  Harris then passed out.  McDonald testified that Harris
had a knot on the back of his head and was mumbling.  He testified that Betty
told the 9-1-1 dispatcher that Bailey struck Harris with a skillet.

Betty denied seeing Bailey strike Harris
with a skillet.  She did not recall speaking to the 9-1-1 dispatcher, but if
she had, she would have merely repeated what Harris told her: that Bailey
struck him with the skillet.  She believed that Bailey was the aggressor and Harris
was defending himself.

Harris was bleeding when Officer Maria
Bucher arrived.  Bucher testified that Harris was not cooperative because of
his injuries and the pain.  Harris testified that he felt “woozy.”  Betty told
Bucher that Bailey struck Harris with the skillet as she and Harris were
leaving the house.  Betty did not tell Bucher that she was in the restroom
during the fight or that the skillet incident had been relayed to her by
Harris.  Bailey told Bucher that if Harris had any injuries they resulted from
Harris falling.  Bailey wanted to press charges against Harris, but could not
show that he had been injured or provide sufficient information to enable
Bucher to file charges.

Betty testified that she owns a cast
iron skillet, which was on the stove when she returned from the restroom and
encountered the fight.  She saw the skillet on the day of the offense, but did
not know where it is now.  The skillet was never recovered.

STANDARDS OF REVIEW

Under legal sufficiency review, we determine
whether, after viewing all the evidence in the light most favorable to the
verdict, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Curry
v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing Jackson
v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). 
We do not resolve any conflict of fact or assign credibility to the witnesses,
as this was the function of the trier of fact.  See Dewberry
v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Adelman
v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v.
State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991).  Inconsistencies in the
evidence are resolved in favor of the verdict.  Curry, 30 S.W.3d at 406; Matson, 819 S.W.2d at 843.

Under factual sufficiency review, we ask
whether a neutral review of all the evidence demonstrates that the proof of
guilt is so weak or that conflicting evidence is so strong as to render
the jury’s verdict clearly wrong and manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  We review the evidence weighed by the jury that tends
to prove the existence of the elemental fact in dispute and compare it with the
evidence that tends to disprove that fact.  Johnson, 23 S.W.3d at 7.  We
do not indulge in inferences or confine our view to evidence favoring one side. 
Rather, we look at all the evidence on both sides and then make a predominantly
intuitive judgment.  Id.

ANALYSIS

A person commits aggravated assault if
he intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a
deadly weapon during commission of the assault.  See Tex. Pen. Code Ann. § 22.01 (Vernon Supp. 2008); see
also Tex. Pen. Code Ann. § 22.02
(Vernon Supp. 2008).  Bailey challenges the legal and factual sufficiency of
the evidence to establish that he used a deadly weapon.

A deadly weapon constitutes “anything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.” 
Tex.
Pen. Code Ann. § 1.07
(17)(B) (Vernon Supp. 2007).  Several factors aid this
determination: (1) the size
and shape of the object; (2) the manner of its use or intended use; (3) the
nature or existence of inflicted wounds; and (4) any testimony of the object’s
life-threatening capabilities.  Villarreal
v. State, 255 S.W.3d
205, 209 (Tex. App.—Waco 2008, no pet.).

Bailey cites Hester v. State,
909 S.W.2d 174 (Tex. App.—Dallas 1995, no pet.) and Tucker v. State,
221 S.W.3d 780 (Tex. App.—Corpus Christi 2007), rev’d, 2008 Tex. Crim. App. LEXIS 1443 (2008), to
support his contention that the skillet is not a deadly weapon.[2] 
He complains that: (1) Harris
did not suffer serious bodily injury; (2) the skillet was not recovered; and (3)
the record contains no testimony demonstrating how the skillet was used, such
as how hard he hit Harris or how he delivered the blows.

In Hester, the evidence was
insufficient to support a deadly weapon finding regarding a screwdriver.  See Hester,
909 S.W.2d at 176.  Hester had not “stab[bed]
or attempt[ed] to stab the Voights with the screwdriver” or “verbally threaten[ed]
to inflict serious bodily injury or death.”  Id. at 180.  There was no
evidence of the “sharpness, length, or width of the screwdriver’s shaft.”  Id.  The State admitted a “Stanley-type, Phillips-end screwdriver” as a jury aid,
but the evidence did not show that Hester had used that type of screwdriver or
that the one he did use or “one sufficiently similar to it could cause death or
serious bodily injury.”  Id.  The Voights did not testify that they believed
Hester would cause them serious bodily injury or death.  See id.

In Tucker, the Corpus Christi
Court held that the evidence was insufficient to support a deadly weapon
finding regarding a knife.  See Tucker, 221 S.W.3d at 785.  Tucker said nothing “before, during, or
after the infliction of the injuries.”  Id. at 784.  Other than
testimony that the knife had a two inch blade, there was no testimony about the
knife’s sharpness.  See id.  Testimony merely established that
the knife could be “classified” or “considered” a deadly weapon, not that it
“had the ability to inflict death or serious injury.”  Id.  The
knife was not introduced into evidence and there was no evidence regarding the
manner with which it was used, as the victim was “laying on the ground with her
hands over her face and, therefore, unable to see the knife and the manner of
its use.”  Id.  The victim’s wounds were “not severe enough to require
stitches.”  Id.

The Court of Criminal Appeals recently
reversed Tucker.  See Tucker v. State, No. PD-0742-07, 2008
 Tex. Crim. App. LEXIS 1443 (Tex. Crim. App. Nov. 26, 2008).  The
victim suffered two stab wounds:
(1) one wound penetrated the victim’s arm; and (2) a wound to the “back of the
neck, near the spine” caused a lot of pain.  See Tucker, 2008 Tex. Crim. App. LEXIS 1443 at *9.  Expert testimony was not
required to establish that the arm wound “could easily have severed a major
blood vessel or nerve, placing the victim’s life, or at least the use of her
arm, in jeopardy.”  Id.  Thus, “the weapon that caused her wound was capable,
in its manner of use, of causing serious bodily injury.”  Id.  The neck
wound, “received in a vulnerable area, would seem to carry at least some
potential for resulting in a serious bodily injury such as paralysis or
death.”  Id. at *9-10.

Two police officers testified that “the
injuries were inflicted by a deadly weapon.”  Id. at *10.  Their “lengthy experience” qualified them to provide such testimony.  Id.  The Corpus Christi Court “minimized the officers’ testimony in claiming that
neither specifically testified that the folding knife had the ability to
inflict death or serious bodily injury.”  Id. at *10-11.  “Though neither
officer knew whether the injuries were inflicted by a knife, a key, or some
other object, both agreed, based on the nature of the injuries received, that
the weapon that caused the injuries was a deadly weapon.”  Id. at *11.  The
 Corpus Christi Court’s reliance on “the absence of any detailed description
of the knife or key or of exactly how appellant employed the weapon used to
injure the victim,” was based on the “incorrect assumption that the use of a
deadly weapon cannot be inferred from the injuries themselves.”  Id.  “Whether a deadly weapon can be inferred solely from the victim’s injuries
depends, of course, on the nature of those injuries.”  Id.

Tucker and Hester are distinguishable for several
reasons.  First, the victim in Tucker was not in a position to see what
object was used to cause her wounds.  Harris was
in a position to see Bailey use the skillet and apparently did see him use the skillet, having
testified that Bailey struck him with the skillet.  In Hester, Hester
neither used nor attempted to use the screwdriver to inflict injury.  Bailey
actually did use the skillet to injure Harris.

Second, the defendants in Tucker
and Hester said nothing and made no threats.  Here, Bailey told Harris
“‘You better get out of here bitch ass n-----‘ or something like that.”  This
statement can certainly be viewed as an expression of intent to inflict harm
upon Harris.  See Hernandez
v. State, 819 S.W.2d
806, 810 (Tex. Crim. App. 1991)
(“Intent may be inferred from acts, words and conduct of accused.”); see
also
McCullough v. State, No.
05-07-00605-CR, 2008 Tex.
App. LEXIS 350, at *8-9 (Tex. App.—Dallas Jan. 17, 2008, pet. ref’d) (not
designated for publication) (rejecting contention that defendant’s
statement, “I don’t
need you bitch,” when he threw a plate at the victim “expresses anger or
frustration, as opposed to any threat or intent to injure”; the jury could consider the statement “as a threat to [the victim’s] personal
safety.”). 

Third, the Court of Criminal Appeals’
ruling in Tucker supports a finding that the skillet was capable of
causing death or serious bodily injury, even absent evidence showing that
Harris suffered serious bodily injury or showing how the skillet was used.  The
State was not required to either introduce the skillet into evidence or
establish that Harris suffered serious bodily injury in order to establish the
skillet as a deadly weapon.  See Tucker,
2008 Tex. Crim. App. LEXIS 1443, at *8; see also Morales v. State, 633 S.W.2d 866, 868 (Tex. Crim.
App. 1982); Villarreal, 255 S.W.3d at 209.  Detective Michelle Starr testified
that any hard object used to strike a person’s head, such as a brick or an iron
skillet, would be a deadly weapon.  See Tucker, Tex. Crim. App. LEXIS 1443, at *8, 10-11.  She testified that the skillet would
constitute a deadly weapon in this case, as it is capable of causing serious
bodily injury when aimed at a person’s head.  Id.

Even in the absence of a description of
the weapon or the manner of its use, the “injuries suffered by the victim can
by themselves be a sufficient basis for inferring that a deadly weapon was used.” 
Id. at *8.  In Ashcraft v. State,
No. 03-07-00237-CR, 2008 Tex. App. LEXIS 1338 (Tex. App.—Austin Feb. 21, 2008, pet. ref’d) (not designated for publication), the Austin
Court reached a similar conclusion, finding that Tucker “was
simply wrong when it stated that there
was no evidence regarding the manner of the knife’s use by the defendant.”  Ashcraft, 2008 Tex. App. LEXIS 1338, at *6.
 “[T]he evidence
showed that the defendant used the knife to stab the complainant twice, once in
the neck near the spine.” 
Id. 
Ashcraft had stabbed the victim in the back four times using a pocket knife with a two-inch blade.  See
id. at *8.  The knife was never recovered.  Id. at *4.  The victim’s
wounds were not serious, but required hospital treatment.  Id. at *8. 
Two wounds were close to the victim’s spine; the “jury could have reasonably
inferred that, but for luck, the injuries inflicted by [Ashcraft] might have
been much worse.”  Id.  The jury could also “conclude that a knife long
enough and sharp enough to penetrate a body as deeply as 5 centimeters, when
used to repeatedly stab a person in the back during a close physical struggle,
is capable of causing serious bodily injury.”  Id.  The Austin Court found the evidence legally and factually sufficient to support a deadly weapon
finding.  See id. at *8-9.

In the present case, Harris identified
the skillet as a cast iron skillet and described it as “black, round with rough
edges.”  There can only be so many ways to use a skillet as a deadly weapon. 
That Bailey struck Harris in the back of the head indicates that the skillet
was likely swung at Harris.  The record also suggests that Bailey and Harris
were in close proximity when Bailey struck Harris with the skillet.[3]

Harris’s injuries caused him to pass
out, bleed, and feel “woozy”, caused a knot to rise on the back of his head,
and were significant enough to prompt a visit to the emergency room.  An EMS technician described Harris’s injury as “possibly severe.”  Harris was admitted to the
emergency room for “head trauma assault.”  He complained of a headache, blurred
vision, and pain.  The doctor’s impression was “[a]cute closed head injury
[and] cervical sprain.”  A photograph admitted into evidence depicts Harris
lying on an emergency room bed wearing a head strap.  CT scans of Harris’s head
and spine were also taken.  Medical personnel were apparently concerned about
the extent of Harris’s injuries.  His head injury could have resulted in
hemorrhaging, lesions, fractures, fluid collections, etc.

As in Ashcraft and Tucker,
the jury could reasonably infer that wounds inflicted by the skillet had “some
potential for resulting in a serious bodily injury” and “but for luck, the
injuries inflicted by [Bailey] might have been much worse.”  Tucker, 2008 Tex. Crim. App. LEXIS 1443, at *9-10; Ashcraft,
2008 Tex. App. LEXIS 1338, at *8.
 Due to the skillet’s hardness, the number of times that Harris was struck,
Harris’s close proximity to Bailey, and the nature of Harris’s injuries, the
jury could reasonably conclude that the skillet was capable, in its
manner of use, of causing death or serious bodily injury.  See Tucker, 2008 Tex. Crim. App. LEXIS 1443,
at *7-11; see also Ashcraft, 2008 Tex. App. LEXIS 1338, at *8-9.

Viewing all the evidence in the light
most favorable to the verdict, the jury could reasonably conclude, beyond
a reasonable doubt, that Bailey used the skillet as a deadly weapon.  See
Curry, 30 S.W.3d at 406.  The
proof of guilt is not so weak nor the conflicting evidence so strong as to
render the jury’s verdict clearly wrong or manifestly unjust.  See Watson, 204 S.W.3d at 414-15; see
also Johnson, 23 S.W.3d at 11.  Because
the evidence is legally and factually sufficient to sustain Bailey’s
conviction, we overrule his first and second points of error.  The judgment is
affirmed.                                         

 

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Vance, and

Justice
Reyna

(Justice
Vance concurs in the judgment with a note)*

Affirmed

Opinion
delivered and filed December 17, 2008

Do not publish

[CRPM]

 

*           (This
is another example of the problem with the “deadly weapon” definition in the
Penal Code.  Hopefully, at some point the Legislature will amend the statute to
include only items that are truly deadly weapons.  A common ordinary skillet,
found in every kitchen, should not be classified as a deadly weapon, given the
consequences that flow from such a finding.  Nevertheless, under existing
precedents, I concur in the judgment.)

 

 

 









[1]               Medical records reflect
that Harris claimed to have been struck five times.





[2]               Citing McCain v. State, 22 S.W.3d 497 (Tex. Crim. App.
2007), Bailey contends that the skillet cannot meet the
definition of a deadly weapon because “kitchen
knives, utility knives, straight razors, and eating utensils are manifestly
designed for other purposes and, consequently, do not qualify as deadly
weapons.”  McCain, 22 S.W.3d at 502.  However, the Court of Criminal
Appeals held that “objects
used to threaten deadly force are in fact deadly weapons.”  Id. at 503. 
In McCain, a butcher knife was found to be a deadly weapon.  See id.





[3]               The record is not
entirely clear as to whether Harris was struck in the kitchen, where the
skillet was located, during the close physical altercation with Bailey or in
the living room as he and Betty were exiting the apartment.  As the sole judge
of the weight and credibility of witness testimony, the jury bore the burden of
resolving this inconsistency.  See Lancon v. State, 253 S.W.3d 699, 707 (Tex. Crim.
App. 2008).