

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00211-CR

**CHRISTOPHER LAMAR MOORE,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

_____

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2007-503-C2**

## MEMORANDUM  OPINION

A jury convicted Christopher Lamar Moore of aggravated robbery and sentenced him to twenty-nine years in prison.  In two points, Moore challenges: (1) the factual sufficiency of the evidence to support a deadly weapon finding; and (2) the trial court's refusal to allow him to impeach a witness.  We affirm.

### FACTUAL BACKGROUND

Sabra Jones cashed her paycheck and gave Moore, her live-in boyfriend, $20 to purchase an I.D.  Jones placed $20 in her pocket and hid the rest of the cash in her car.

After Moore purchased the I.D., he appeared agitated and became increasingly so during the drive home. Jones told Moore that she wanted to end their relationship. Moore stated that he would not leave with nothing, but Jones refused to give him any money. Moore removed his shirt and began slamming his fists together, insisting that he would not leave empty-handed. He punched the dash, which cracked and broke off. He was yelling, cursing, and screaming. He asked to be dropped off at a store.

At the store, Moore straddled and choked Jones. Jones managed to exit the car. Moore thrust his hands down Jones's shirt and pants to find her money. He took the $20 in Jones's pocket. He struck Jones in the face, causing Jones to fall to the ground, and kicked Jones in the head. When a woman stopped to help, Moore fled the scene.

## FACTUAL SUFFICIENCY

In point one, Moore challenges the factual sufficiency of the evidence to sustain a finding that he used his foot as a deadly weapon.

### Standard of Review

Under factual sufficiency review, we ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson*, 23 S.W.3d at 7. We do not indulge in

inferences or confine our view to evidence favoring one side. Rather, we look at all the evidence on both sides and then make a predominantly intuitive judgment. *Id.*

## Analysis

A deadly weapon constitutes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN. CODE ANN. § 1.07 (a)(17)(B) (Vernon Supp. 2007). Several factors aid this determination: (1) the size and shape of the object; (2) the manner of its use or intended use; (3) the nature or existence of inflicted wounds; and (4) any testimony of the object's life-threatening capabilities. *Villarreal v. State*, 255 S.W.3d 205, 209 (Tex. App.—Waco 2008, no pet.).

Moore argues that the evidence is factually insufficient to support a finding that he used his foot as a deadly weapon because Jones did not suffer serious bodily injury, the record contains no evidence of the force of the kick, and the record contains no evidence of his intent. We disagree.

The State was not required to show that Jones suffered serious bodily injury. *See Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008); *see also Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982); *Villarreal*, 255 S.W.3d at 209. Dr. Randall Smith testified that a foot could be a deadly weapon if used to kick a person in the head while the person was lying down. *See Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd).

Neither was the State required to show the manner with which Moore used his foot to kick Jones. "Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a

deadly weapon was used." *Tucker*, 274 S.W.3d at 691-92; *see Bailey v. State*, No. 10-07-00381-CR, 2008 Tex. App. LEXIS 9392, at \*10-15 (Tex. App.—Waco Dec. 17, 2008, pet. ref'd) (not designated for publication). In *Bailey*, we noted that there could only be so many ways to use a skillet as a deadly weapon. *See Bailey*, 2008 Tex. App. LEXIS 9392, at \*12. Likewise, there can only be so many ways to use a foot as a deadly weapon. The term "kick" itself denotes force. *See* WEBSTER'S COLLEGIATE DICTIONARY 641 (10th ed. 1993) (defining "kick" to mean "a blow or sudden forceful thrust with the foot").

In fact, the record indicates that Moore struck Jones in the head with a forceful kick. Moore and Jones were in close proximity when Moore kicked Jones. Witness Bonnie Bell saw this kick and was concerned enough to warn Jones that she could have a concussion. When Bell attempted to help Jones stand, Jones became "woozy" and collapsed. Officer Joseph Fair believed that Jones was close to unconsciousness. He observed abrasions on her elbow, red marks on her throat that indicated strangulation, a large knot on her forehead, and blood coming from her mouth. Jones was placed in a c-spine and given oxygen while in route to the emergency room.

At the hospital, Dr. Smith diagnosed Jones with a hematoma and prescribed pain medication. Smith testified that most of Jones's systems were normal, except for the bruising and contusions on her skin and the headaches. Jones suffered from migraines in the months following the assault. Smith explained that persistent headaches would be a problem that was not evident at the time of Jones's admission to the hospital. Smith testified that a kick to the head could cause intracranial bleeding or brain swelling, brain herniation, death, spine or neck fractures, and facial injuries.

The jury could reasonably infer that wounds inflicted by Moore's foot had "some potential for resulting in a serious bodily injury" and "but for luck, the injuries [] might have been much worse." *Tucker*, 274 S.W.3d at 692; *Ashcraft v. State*, No. 03-07-00237-CR, 2008 Tex. App. LEXIS 1338, at *8 (Tex. App.—Austin Feb. 21, 2008, pet. ref'd) (not designated for publication); *see Bailey*, 2008 Tex. App. LEXIS 9392, at *14. Moore's intent can be inferred from these circumstances. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (Intent can be inferred from the acts, words, and conduct of the accused, the extent of the injuries and the relative size and strength of the parties). Due to the apparent force of the kick, Moore's close proximity to Jones, and the nature of Jones's injuries, the jury could further conclude that Moore's foot was *capable*, in its manner of use, of causing death or serious bodily injury. *See Tucker*, 274 S.W.3d at 692; *see also Bailey*, 2008 Tex. App. LEXIS 9392, at *14-15.

We hold that the proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong or manifestly unjust. *See Watson*, 204 S.W.3d at 414-15; *see also Johnson*, 23 S.W.3d at 11. We overrule point one.

## IMPEACHMENT

In point two, Moore contends that the trial court improperly excluded impeachment evidence. We review a trial court's evidentiary rulings for abuse of discretion. *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

On direct-examination, Jones testified that her paycheck totaled $2,800 and consisted of Christmas bonuses. After the State rested, Moore attempted to impeach Jones with evidence that her check was not for $2,800 and she did not receive bonuses

as she had claimed. The trial court sustained the State's objection to improper impeachment on a collateral matter. On appeal, Moore contends that the evidence was admissible to correct a false impression.

The general rule is that a party is not entitled to impeach a witness on a collateral matter. *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990). The test as to whether a matter is collateral is whether the cross-examining party would be entitled to prove it as a part of his case tending to establish his plea. *Id.* An exception exists "[w]hen a witness leaves a false impression concerning a matter relating to his or her credibility, the opposing party is allowed to correct that false impression." *Id.* at 676.

However, "the opponent must correct the 'false impression' through cross-examination of the witness who left the false impression, *not* by calling other witnesses to correct that false impression." *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002); *Jolly v. State*, No. 02-06-00386-CR, 2008 Tex. App. LEXIS 4600, at *10 (Tex. App.—Fort Worth June 19, 2008, no pet.) (not designated for publication). Not until after Jones had testified and the State had rested did Moore attempt to introduce evidence of Jones's payroll records through the testimony of Tracy Driver. Moore made no attempt to correct the alleged false impression through cross-examination of Jones. At most, the defense asked Jones on cross-examination, "And it was your testimony, if I recall it, that the check was for $2,800?" Jones responded affirmatively.

Moreover, "[u]nless the witness's testimony created a false impression that is '*directly relevant* to the offense charged,' allowing a party to delve into the issue beyond the limits of cross examination wastes time and confuses the issues." *Hayden v. State*,

No. PD-0860-07, 2009 Tex. Crim. App. LEXIS 510, at *11 (Tex. Crim. App. Apr. 8, 2009) (emphasis added). The amount of Jones's paycheck was not directly relevant to the offense charged.[1] *See id.* at *12 (Rejecting Hayden's argument that evidence that the victim was a registered sex offender was admissible at punishment to rebut the false impression of the victim's character raised at the guilt phase of trial: "Allowing Hayden to impeach Morgan's and Marshall's testimony with the extrinsic evidence would waste time and confuse the issue by focusing the jury's attention on the victim's character rather than the defendant's personal responsibility and moral culpability.").

Accordingly, the trial court did not abuse its discretion by excluding this evidence. We overrule point two.

The judgment is affirmed.

---

[1] Moore complains that Jones's testimony was the only evidence of robbery. Whether her paycheck totaled $2,800 or $935, the fact remains that Moore allegedly stole $20. A jailer and an officer testified that Moore was found in possession of a $20 bill. Moreover, Moore was able to elicit other testimony from Jones that gave rise to questions concerning her credibility.

Neither are we persuaded by the case law cited by Moore. In *Keller v. State*, 662 S.W.2d 362, (Tex. Crim. App. 1984), a witness testified that he sold the car to the defendant, but refused to testify to where he got the car. *See Keller*, 662 S.W.2d at 364. The question was relevant to whether the defendant committed the charged offense of unauthorized use of an automobile. *See id*. at 365. In *Rankin v. State*, 41 S.W.3d 335 (Tex. App.—Fort Worth 2001, pet. ref'd), the Fort Worth Court held that the trial court erred by refusing to allow Rankin to correct a false impression created by a witness who denied performing as a topless dancer. *See Rankin*, 41 S.W.3d at 344. However, Rankin elicited this testimony on cross-examination. *See Lopez v. State*, 928 S.W.2d 528, 532 (Tex. Crim. App. 1996) (Evidence is not admissible to correct a false impression created by "prompting or maneuvering"); *see also Crenshaw v. State*, 125 S.W.3d 651, 656 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (False impression exception does not "apply to permit opposing counsel to rely on his own interrogation during cross-examination to contradict the witness and then admit evidence of collateral matters which would otherwise be inadmissible."). In *Cantu v. State*, 939 S.W.2d 627 (Tex. Crim. App. 1997), the Court of Criminal Appeals found that letters were relevant to show a witness's strong bias in the defendant's favor and her credibility by "contradict[ing] her testimony that she did not find the murders [] somehow funny or amusing." *Cantu*, 939 S.W.2d at 635. While the Court of Criminal Appeals did not address the fact that the witness's denials were elicited by the State, we note that the evidence was directly relevant to the defendant's commission of the charged offense of capital murder.

                                                      FELIPE REYNA
                                                      Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed July 1, 2009
Do not publish
[CRPM]