

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00197-CR

GUADALUPE CORTEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 23,949-C, Honorable Ana Estevez, Presiding

April 25, 2014

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Guadalupe Cortez, appeals the trial court's judgment of conviction for aggravated assault with a deadly weapon and the resulting forty-five-year sentence.[1] On appeal, he challenges the sufficiency of the evidence to support the jury's finding that, during the commission of an assault on David Alexander, appellant used or exhibited a deadly weapon. We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

Factual and Procedural History

David and his fifteen-year-old son, Daniel, lived in a house south of Amarillo. When David returned home from doing volunteer work at his church on the afternoon of Saturday, November 24, 2012, his fifteen-year-old son Daniel, met him at the door to let him know that he had permitted a young man he knew as a friend's brother-in-law into the home to use the phone after the young man had approached the house seeking assistance after he experienced car trouble. This young man, later identified as appellant, sat at the breakfast bar in the kitchen and seemed to be calling to arrange a ride back into town.

David was agreeable to the arrangement and noted that he thought his son had done a "kind thing" by helping appellant. David sat down in the living room and began to watch television. As appellant made phone calls, Daniel went to the back of the house to tidy up the play room his nephew would soon be over to use.

Appellant, apparently having contacted someone for a ride, walked outside. After about five or ten minutes, he returned to the front door, knocked, and announced to Daniel that, apparently, his ride was not coming after all. He asked to use the phone again to see if he could arrange another ride and returned to the kitchen area when David agreed that he could. David remained in the living room, and Daniel returned to his chore in the back of the house.

After appearing to have used the phone, appellant joined David in the living room and began talking to David. Appellant indicated to David that he was waiting on a call back with respect to his transportation. David told appellant the he and Daniel would be

leaving for town soon to pick up David's grandson and offered to give appellant a ride to wherever he needed to go in town since they would be there already. Appellant thanked David for the offer and asked if it was acceptable to David if he lingered there at the house a bit longer to see if his ride would show up. David agreed, and the two remained sitting in the living room together.

A few minutes later, appellant stood up from the couch and approached David with the white cordless phone in his hand, leading David to believe that appellant was simply coming over to return the phone he had used. Instead, appellant tossed the phone aside, struck David in the left temple area, fracturing his skull, and began to slash and stab at David's face with what David described as "a small knife or box cutter." Daniel responded to David's shouts and screams for help, came behind appellant, and began to yell and scream at him, prompting appellant to turn his attention toward Daniel. Daniel fled into the kitchen but tripped over a chair, allowing appellant to catch up to him and begin assaulting him. David saw that appellant was attacking Daniel with a sharp object, which appeared to him to be "a silver box cutter," and David raced into the kitchen to help his son. David pushed appellant off Daniel, at which point appellant began attacking David again, this time stabbing him in the arm, shoulders, and chest with that same sharp object.

Appellant redirected his energy on Daniel, however, and chased after Daniel with a bar stool. Appellant threw the bar stool at Daniel and continued running after him. David followed and picked up the bar stool as he passed by it. At some point, appellant threw an iron skillet at David, and David used the bar stool to shield himself from the skillet. As the chase continued, David tossed Daniel his cell phone, and Daniel ran

outside. Appellant initially ran after Daniel but then turned and ran in the opposite direction. Seeing that Daniel was a safe distance away and that appellant was running in the opposite direction, away from Daniel, David went back inside the house, locked the doors, and called 911. Moments later, Daniel also contacted 911 from his father's cell phone.

At the trial on charges against appellant alleging aggravated assault on David, the jury heard testimony from David and Daniel regarding the attack on them in their home and heard from law enforcement officers regarding their investigation of the attack. The jury returned its verdict of guilt. The trial court assessed punishment at forty-five years' imprisonment and imposed judgment accordingly. Appellant timely appealed.

On appeal, appellant contends the evidence is insufficient to show only that the instrument used in the assault was, in the manner of its use, capable of causing death or serious bodily injury. He challenges no other element of the offense. We then will limit our review to only the evidence relevant to the inquiry whether appellant used a deadly weapon in his assault on David.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in

4

character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

## Applicable Law

A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2013). An assault becomes aggravated if the actor commits assault and uses or exhibits a deadly weapon during commission of the assault. *See id.* § 22.02(a)(2). Again, appellant challenges only the deadly weapon finding as it relates to his conviction for aggravated assault with a deadly weapon. We need, then, to focus our review only on the evidence relevant to the character of the weapon appellant used in his assault on David.

The Texas Penal Code defines a "[d]eadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

5

*Id.* § 1.07(a)(17)(B) (West Supp. 2013). We first observe that the State need not introduce the object into evidence for the trier of fact to find that such object was a deadly weapon. *See Morales v. State*, 633 S.W.2d 866, 868–69 (Tex. Crim. App. [Panel Op.] 1982); *Billey v. State*, 895 S.W.2d 417, 420 (Tex. App.—Amarillo 1995, pet. ref'd) (concluding that "the actual knife used in the commission of an offense need not be introduced into evidence if a witness is able to testify about the knife and the manner in which it was used"). Even without a description of the weapon, the victim's injuries can, by themselves, serve as a sufficient basis for the fact-finder to infer that an appellant used a deadly weapon. *See Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008); *see also Morales*, 633 S.W.2d at 868–69 (concluding that photographic evidence of a deep slash requiring stitches and running from below victim's earlobe across her cheek to the corner of her mouth was sufficient to show that a deadly weapon was used).

In fact, regardless of whether any wounds were inflicted, a deadly weapon finding may be made if it is otherwise supported by the evidence. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *Villarreal v. State*, 255 S.W.3d 205, 209 (Tex. App.—Waco 2008, no pet.). To determine whether a particular knife is a deadly weapon, courts consider the following factors: (1) the size, shape, and sharpness of the knife; (2) the manner of its use or intended use; (3) the nature or existence of inflicted wounds; and (4) any testimony of the knife's life-threatening capabilities. *See Thomas v. State*, 821 S.W.2d 616, 619 (Tex. Crim. App. 1991) (en banc). Both expert testimony and lay testimony may be independently sufficient to support a deadly weapon finding. *Banargent v. State*, 228 S.W.3d 393, 398–99 (Tex. App.—Houston [14th Dist.] 2007,

pet. ref'd).  No one factor is determinative, and the fact-finder must examine each case on all of its facts to determine whether the instrument is a deadly weapon.  *See Garcia v. State*, 17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

Analysis

Appellant was apprehended in the rural area near David's home.  A search of the surrounding area did not yield the actual weapon used and, consequently, the instrument was not introduced into evidence at trial for the jury's observation.  Its absence, however, is not fatal to the State's case; sufficient evidence otherwise supports the jury's finding that appellant used a deadly weapon during the assault on David.  *See Thomas*, 821 S.W.2d at 619; *Morales*, 633 S.W.2d at 868–69.

David consistently described the object he saw as a knife or box cutter.  Admittedly, when appellant initially attacked him, David did not see the object used very clearly, if at all.  It was when appellant turned his aggression on Daniel that David was first able to get a good view of the "sharp object" that appellant was using in the attacks, describing the implement as "a knife or box cutter" and later clarifying that "[i]t appeared to be a silver box cutter."[2]  Notably, after using the knife or box cutter on Daniel and after David more clearly saw what appellant was using in his attacks, appellant again attacked David with the knife or box cutter, stabbing him in the chest, arm, and neck areas during this second attack.

_____

[2] Defense counsel agreed at trial that David's description of the instrument used as a box cutter was in evidence but objected to Sergeant Pat Williams's use of the term "box cutter knife."  Defense counsel insisted that the evidence showed "box cutter, not a box cutter knife."

From David's and Daniel's descriptions of the attacks, appellant used the knife or box cutter to repeatedly stab and slash at David about his face, neck, and torso areas and also similarly used the knife or box cutter to inflict injuries on Daniel. The manner in which appellant used the instrument lends itself to the jury's finding that appellant used or exhibited a deadly weapon during the commission of the assault on David.

Further, we have in the record David's description of the injuries he sustained in the attack. We have the medical records describing the injuries observed on David and detailing the courses of treatment required to treat those injuries. Two larger lacerations of the five or six lacerations to David's face required a total of nineteen stitches to close. We also learn that one of the blows to the left side of David's head fractured his skull. We have photographs, too, of David's injuries both before and after medical treatment. All of this evidence shows serious and numerous lacerations and a fracture to David's skull. The extent and nature of the injuries David sustained in the assault lend further weight to the evidence showing that appellant used a deadly weapon during the commission of the assault on David.

Sergeant Pat Williams of the Randall County Sheriff's Office testified that, based on his nineteen years of experience and training, a box cutter used in the way appellant used the box cutter against David is capable of causing death or serious bodily injury. To support his conclusion, Williams recounted past incidents involving a similar weapon or similar blade.

David's description of the weapon used against him as knife or box cutter, his and Daniel's accounts of the attack and David's injuries, the documentary and

photographic evidence demonstrating the nature of the injuries that David sustained during the attack, and Williams's testimony regarding the capacity of a box cutter to inflict death or serious bodily injury all represent evidence that appellant used a deadly weapon during the assault on David. With this evidence before it, the jury could have rationally concluded that appellant did use or exhibit a deadly weapon during the assault on David. We overrule appellant's challenge to the evidence so showing.

## Conclusion

Having overruled appellant's sole point of error, we affirm the trial court judgment of conviction. *See* TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

Do not publish.